[Filed November 5, 1888.]

# BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF OREGON, RESPONDENT, *v.* OREGON RAILWAY AND NAVIGATION COMPANY, APPELLANT.

COMMISSIONERS — BOARD OF — LEGISLATIVE POWERS OF. — A power conferred by the legislature upon a board of commissioners required to be exercised with reference to the affairs of certain corporations will not be extended by implication, and the acts which the board attempts to do under the power will not be upheld, unless the authority to do them is affirmatively shown to be included in it, where the legislative assembly of the state passed an act creating a board of railroad commissioners, empowering it to examine into the affairs of railroad corporations doing business within the state, and required it to make a biennial report, with such suggestions "as to what changes in the classification of freights or what change in the rate of freight or fares are advisable for the public welfare," but conferred no express authority upon the board to regulate the price of freight, or to determine when freight charges were unreasonable.

ID. — *Therefore held,* that the board had no jurisdiction to require a railroad company to refund to a shipper a sum of money alleged to have been exacted from him in excess of a reasonable charge for the shipment.

ID. — *Held further,* that where such act directed the board to examine into such affairs, and specially required it to report the result of its investigation concerning specific matters to the legislature, evidently for the purpose of its action thereon, it would not be presumed that the act intended to give the board authority to adjust those matters, although it was empowered by certain provisions therein contained to hear complaints made by persons against railroad companies on account of acts in general done or omitted to be done by them.

ID. — *And held further,* that a provision in the act, to the effect that whenever any railroad company violated, refused, or neglected to obey any lawful order or requirement of the board, to enter complaint in the circuit court of the state, sitting in equity, and that such court should have power, upon

XVII. OR.—5

notice to the company, to proceed to hear and determine the matter speed-
ily, etc., did not authorize such a proceeding in order to enforce the repay-
ment of money charged on freight claimed to be in excess of a reasonable
charge; that a claim of that character can only be enforced by a common-
law action.

Appeal from the Circuit Court for the county of Uma-
tilla.

*Morton D. Clifford, District Attorney, J. H. Slater,* and
*Tustin & Leisure,* for Respondent.

*Dolph, Bellinger, Mallory,* and *Simon,* for Appellant.

Thayer, C. J.—The respondent herein instituted a pro-
ceeding in said court against the appellant, to require it
to refund to one E. J. Summerville the sum of eleven dol-
lars, claimed to be an excess over and above a reasonable
compensation, exacted by the appellant from said Sum-
merville, for transporting for him a car-load of wheat from
Pendleton to Portland. The respondent was created by
an act of the legislative assembly of the state, entitled "An
act to create and establish a board of railroad commis-
sioners, and to define and regulate its powers and duties,
and to fix the compensation of its members," approved
February 18, 1887.

The appellant is a railroad corporation organized under
the laws of the state, and maintains a line of railroad be-
tween the points mentioned, and at other places within the
state. The proceeding was taken under the said act, and
the main question presented for the consideration of this
court is, whether it authorizes said board to maintain
a proceeding to obtain relief of the character claimed
therein. I suppose it has become the settled doctrine
that the legislature has authority to establish reasonable
regulations for the control, in certain particulars, of all
corporations whose business is of a *quasi* public charac-

ter, and that, to enable it to exercise such authority prudently and intelligently, it may provide for an inspection of the affairs of the corporation which concern the general community. This authority arises out of the principle that such institutions enjoy privileges and franchises created for the benefit of the public, and is exercised in order that the public may not fail to receive it. Such regulations must not be arbitrary or capricious. Their aim and object must be to promote the welfare of society; otherwise they cannot be enforced. The legislature has the right to judge as to when the public necessity requires the adoption of such measures, but the courts may determine whether a particular regulation is a reasonable exercise of the power.

It is difficult to ascertain, from an examination of said act, what power the legislature conferred upon the said board. Counsel for the appellant claims that no power whatever has been conferred upon it, except to find out as to the freights and fares charged by common carriers, and certain other facts, and report the same to the legislature.

Section 9 of the act provides that "said board may inquire into, ascertain, and report to itself the method by which the accounts of corporations operating railroads or street railways are kept."

Section 10 provides that "the board shall make a biennial report to the legislative assembly, including such statements, facts, and explanations as will disclose the actual workings of the system of railroad transportation of freight and passengers, and its bearings on the business prosperity, etc., with suggestions in relation thereto, etc., as to them may seem appropriate. They shall also, at such times as they may deem advisable, examine any particular subject connected with the condition and management of railroads, and report to the legislative assembly their doings thereon and their reasons therefor."

Section 11 provides that "said commissioners shall examine into the condition and management of all other matters concerning the business of the railroads of the state, so far as the same affect or relate to the interests of the public, and to the accommodation and security of passengers or persons doing business therewith, and whether such railroad companies or corporation, their officers, etc., comply with the laws of this state now in force or which shall hereafter be in force concerning them, and such other matters as they may deem important; and for such purpose said commissioners shall have the right to examine all the books, etc., of any railroad company or corporation in this state, and they shall have power to examine, under oath, etc., any and all directors, etc., of any such railroad corporations, and any other person, concerning any matter relating to the condition and management of the business of such company or corporation."

Section 12 provides that "any person, etc., complaining of anything done or omitted to be done by any common carrier subject to the provisions of this act, in contravention of the provisions thereof, may apply to said commission by petition, which shall briefly state the facts, whereupon a statement of the charges thus made shall be forwarded by the commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time, to be specified by the commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been done, said carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier shall not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the

duty of the commission to investigate the matter complained of in such manner and by such means as it shall deem proper. No complaint shall at any time be dismissed because of. the absence of direct damage to the complainant."

Section 13 provides that "whenever an investigation shall be made by said commission, it shall be its duty to make a report in writing in respect thereto, which shall include the findings of fact upon which the conclusions of the commission are based, together with its recommendation as to what reparation, if any, should be made by the common carrier to any party or parties who may be found to have been injured, and such finding so made shall thereafter, in all judicial proceedings, be deemed *prima facie* evidence as to each and every fact found. All reports of investigations made by the commission shall be entered of record, and a copy thereof shall be furnished to the party who may have complained, and to any common carrier that may have been complained of."

Section 14 provides that " if, in any case in which an investigation shall be made by said commission, it shall be made to appear to the satisfaction of the commission, etc., that anything has been done or omitted to be done, in violation of the provisions of this act, or of any law cognizable by said commission, by any common carrier, or that any injury or damage has been sustained by the party or parties complaining, or by other parties aggrieved, in consequence of any such violation, it shall be the duty of the commission to forthwith cause a copy of its reports in respect thereto to be delivered to such common carrier, together with a notice to said common carrier to cease and desist from such violation, or to make reparation for the injuries so found to have been done, or both, within a reasonable time, to be specified by the commission; and if, within the time specified, it shall be made

70     Railroad Comm'rs *v.* Railway etc. Co.    [Sup. Ct.

Opinion of the Court — Thayer, C. J.

to appear to the commission that such common carrier has ceased from such violation of law, and has made reparation for the injury found to have been done, in compliance with the report and notice of the commission, or to the satisfaction of the party complaining, a statement to that effect shall be entered of record by the commission, and the said common carrier shall thereupon be relieved from further liability or penalty for such particular violation of law."

Section 15 provides that "whenever any common carrier, as defined in and subject to the provisions of this act, shall violate or refuse or neglect to obey any lawful order or requirement of the commission in this act named, it shall be the duty of the commission, and lawful for any company or person interested in such order or requirement, to enter complaint in the circuit court of the state, sitting in equity, in the judicial district in which the violation or disobedience of such order or requirement shall arise, alleging such injury, and the said court shall have power to hear and determine the matter at any time after service of the complaint, in the usual way, on such short notice to the common carrier complained of as the court shall deem reasonable, and said court shall proceed to hear and determine the matter speedily, in such manner as to do justice in the premises; and on such hearing, the report of said commission shall be *prima facie* evidence of the matter therein stated, and if it be made to appear to such court on such hearing that the lawful order or requirement of said commission exercised in pursuance of the provisions of this act has been violated or disobeyed, it shall be lawful for such court to issue a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further continuing such violation or disobedience, and enjoining obedience to the same; and in case of any disobedience of

any such writ of injunction, or other proper process, mandatory or otherwise, it shall be enforced by proper process issued out of said court."

Section 17 of said act provides to the effect that whenever the commissioners deem that repairs are necessary upon any railroad, or an addition to or a change of its stations or station-houses, or change in its rates of fares for transporting freight or passengers, or in the mode of operating its road and conducting its business, they shall in writing inform the corporation of the improvements or changes which they consider proper, and a report of the proceedings of compliance or of a refusal to comply with such suggestions shall be included in their biennial report to the legislative assembly.

Section 18 of the act requires the board to investigate the causes of any accident on any railroad resulting in loss of life, and invests it with discretionary power to investigate any accident on such road.

Section 19 requires every railroad company or corporation, on request, to furnish said board any information required by it concerning the condition, management, and operation of the road or business of such company or corporation.

Section 20 of said act provides that the board may prescribe the form of the annual statement required to be transmitted to the secretary of state by every company or corporation owning or operating a railroad in this state provided for by act of the legislative assembly of the state of Oregon, approved February 26, 1885, and empowers the board to make changes and additions to such form, and requires it to examine such statements when filed, and if the same be defective or appear erroneous, to notify the corporation to correct it.

Section 22 of said act provides that in case any railroad company or corporation refuses to submit its books, etc.,

to the examination of the board, or to furnish the information provided for in the act, or fails, neglects, or refuses to do or perform any of the requirements of the act, it shall forfeit and pay to the state of Oregon for every such offense a sum of not less than one hundred dollars nor more than five hundred dollars, to be recovered in an action in the name of the state of Oregon against such company or corporation.

And section 23 of the act empowers the board to enter the cars, depots, stations, and other places of business of such corporations, for the purpose of inspecting the same, and to observe the manner and methods in which the business of such corporations is done.

These sections of the act contain, so far as I am able to discover, all the provisions bearing upon the question submitted, and it must be ascertained from them whether the proceeding can be maintained or not. The main object of the act was to ascertain the condition of railroad affairs in the state, and the manner in which they are being conducted. Sections 9, 10, and 11 thereof clearly indicate that such was its purpose. Said sections endow the board of commissioners created by the act with ample power to investigate the subject. This was obviously done in order to enable the legislature to judge as to whether the railroad management was such as was calculated to conserve the best interests of the public, whether the public were being dealt fairly with by those in charge of such management, and whether changes could not be made which would be beneficial to the community. The state has an interest in such matters, and it is highly proper that the legislature should inquire into them; and should it ascertain that the railroad companies were pursuing a selfish, mercenary course, and disregarding the rights of their patrons, it could provide suitable regulations to remedy the mischief. Whether a railroad company is

employing suitable means and appliances for the transportation of freight and passengers over the line of its road with reasonable safety and dispatch, and as cheaply as it can afford to do, and obtain a fair profit, in view of the amount of its investment, is always a pertinent subject of inquiry for the legislature; and the object of the act, it seems to me, from the general spirit and tenor of it, in creating the board of commissioners and clothing it with the functions it possesses, was for the purpose of making such inquiry.

I cannot conclude that the legislature undertook to correct the abuses of railroad companies before it could know with any certainty whether they had been committed. It would not be likely to appoint a commission for execution, to precede one of inquiry, nor that it would delegate its discretion in so important a matter to an inferior board, to be exercised.

The railroad enterprises in this state are as yet in their infancy. The people are greatly interested in having them extended into every district where marketable articles are produced, and it would be very unwise, as well as unjust, to pursue a rash and narrow policy towards them.

It is not contended on the part of the respondent that said act invested the board of commissioners with authority to fix the rate to be charged for the transportation of freight or passengers, nor, as I view it, were they empowered to determine what charges were reasonable or unreasonable. They were required to make a biennial report to the legislative assembly, with such suggestions "as to what changes in the classification of freights, or what change in the rates of freight or fares, are advisable for the public welfare." (Section 10 of act; also section 17.)

This is the only provision in the act I have been able to find which imposes any duty upon the board in regard to rates and fares.

Section 12 of the act requires the board to investigate complaints made by certain persons against common carriers subject to the provisions of the act, on account of anything done or omitted to be done by any such common carrier in contravention of its provisions.

Section 13 makes it the duty of the board to make a report of an investigation made by it, including findings of fact upon which its conclusions are based.

Section 14 makes it the duty of the board, in any case in which an investigation is made, and it appears to the satisfaction of the board that anything has been done or omitted to be done in violation of the provisions of the act, or of any law of which the board has cognizance, by any common carrier, or that any injury or damages have been sustained by the party or parties complaining, or by other parties aggrieved, in consequence of any such violation, to forthwith cause a copy of its report in respect thereto to be delivered to such common carrier, etc.

And section 15 makes it the duty of the board, whenever any such common carrier shall violate, or refuse, or neglect to obey any lawful order or requirement of the board, to enter complaint as therein provided.

Neither of these sections, however, specifies the particular subjects to be investigated, nor what acts done or omitted to be done by such common carrier would be a violation of the act, or of the law of which the board has cognizance, or what would be a lawful order or requirement of the board; nor does any section of it indicate what law the board has cognizance of.

The result is, that the act is hopelessly ambiguous as to the jurisdiction of the board beyond the authority before referred to.   It has power in conducting its investigations to compel railroad companies to furnish it information as provided in section 19 of the act, and also to compel them to adopt such form of annual statement

required by the act of February 26, 1885, to be transmitted to the secretary of state as it may prescribe by virtue of section 20 of the act. But an attempt on the part of the board to adjust claims between railroad companies and persons, firms, corporations, or associations, etc., and to enforce obedience to its orders made in respect thereto, in the manner specified in section 15 of the act, would be groping in the dark.

The first question arising would be, What contention between the railroad company and such persons, firms, etc., has it jurisdiction of? The answer to that question cannot be left to speculation. The jurisdiction of such commissions is not given by implication. Commissions of that character are mere creatures of statute, and .possess no power except what the statute expressly confers upon them.

Again, if the board had jurisdiction to investigate complaints for overcharges on freight, its order to refund the excess could not be enforced in the manner provided in section 15 of the act. The recovery of money unjustly exacted in such cases is a common-law remedy, and the party against whom the claim is made, whether a natural person or a corporation, has the right to a trial by jury before its repayment can be enforced.

A summary remedy of the character of the one provided for cannot be used to enforce a claim for damages arising *ex contractu* or *ex delicto*, although it might be employed to compel the performance of a specific duty necessary to the administration of public affairs.

The several sections of the act, taken together, present an incongruity, and leave an impression that it was made up by a sort of patchwork. Sections 9, 10, 11, and 17 clearly indicate that the object of the investigation of the affairs of railroad corporations is for the purpose of ascertaining facts to be included in the biennial report

which the board is required to make to the legislative
assembly; while it might be inferred from sections 12, 13,
and 14 that its object was to constitute the board a kind
of tribunal of conciliation to adjust the claims of per-
sons against the railroad companies, and to establish
*prima facie* evidence of their validity; and section 15
makes a very lame attempt to compel satisfaction of
them.

What kind of claims it was intended the board should
adjust and require to be satisfied does not appear.   If its
jurisdiction, however, in that particular, is co-extensive
with its authority to investigate such affairs, it must
necessarily extend to claims arising out of torts as well
as contracts, as it is required by section 18 of the act to
investigate the causes of any accident on any railroad
resulting in the loss of life, and of any accident not
so resulting, which it may deem proper to require
investigation.

Under this view, the board would be the most impor-
tant tribunal in the state.   It could adopt its own code
of procedure, formulate its own rules of evidence, be
unembarrassed by the presence of a jury, and adjudicate
in accordance with its own caprices, and if its orders or
requirements were violated, or refused, or disobeyed, it
could enter complaint in the circuit court, "sitting in
equity," and have a mandatory process issued to enforce
them.

It cannot be presumed that any legislature would con-
fer so important a prerogative upon a board of commis-
sions, still we must conclude that it was done in the
present case, if we sustain the view that the authority of
the board to adjust matters between persons and railroad
companies is co-extensive with its authority to investigate
them.   The counsel for the respondent does not claim
that the board has jurisdiction to the extent suggested,

but I fail to discover any point short of it to stop, if it is conceded that the jurisdiction includes the matters involved in the present case.  It will not be contended that the act gives the board jurisdiction in express terms to determine when freight charges are unreasonable; and if the question is left to inference, there is no limit to the extent of its jurisdiction, except the limitation of its authority to investigate, and that seems to extend to all the affairs between the railroad corporations and individuals or associations, and to involve every breach of duty of the former and the consequences attending it.

It has for a long time been considered the safer and better rule, in determining questions of jurisdiction of boards and officers exercising powers delegated to them by the legislature, to hold that their authority must affirmatively appear from the commission under which they claim to act.

There is too strong a desire in the human heart to exercise authority, and too much of a disposition upon the part of those intrusted with it to extend it beyond the design for which, and the scope within which, it was intended it should be exercised, to leave the question of its extent to inference.  Should it be so left, serious disturbances might arise, involving a conflict of jurisdiction which would be highly detrimental to the community.

It is not, it seems to me, requiring too much of the legislative branch of the government to exact, when it creates a commission and clothes it with important functions, that it shall define and specify the authority given it so clearly that no doubt can reasonably arise in the mind of the public as to its extent.

Under the view we have indicated in the foregoing opinion, it follows that the judgment appealed from must be reversed, and the complaint dismissed, and it is so ordered.