IN THE MATTER OF THE APPLICATION AND HEARING BEFORE THE BOARD OF RAILROAD COMMISSIONERS OF THE STATE OF NORTH DAKOTA, ENTITLED, CITY COMMISSION OF BISMARCK, NORTH DAKOTA, v. BISMARCK WATER SUPPLY COMPANY.

STATE OF NORTH DAKOTA EX REL. P. C. REMINGTON, et al., Petitioners, v. C. J. AANDAHL, et al., Respondents.

(181 N. W. 596.)

**Courts — in original proceedings in Supreme Court, state is actual plaintiff.**

1. In an original proceeding in the supreme court, the state is the actual plaintiff, and the relator is a mere incident.

**Removal of causes — suit by state not removable unless based on Federal laws or treaties.**

2. A suit by the state in one of its own courts cannot be removed to a Federal court, unless it is a suit arising under the Constitution or laws of the United States or treaties made under their authority.

**Removal of causes — suit does not "arise under Federal Constitution or laws," unless construction of such laws is involved.**

3. A suit cannot be said to be one arising under the Constitution or laws of the United States or treaties made under their authority until it has in some way been made to appear on the face of the record that some title, right, privilege or immunity, on which the recovery depends will be defeated by one construction thereof or sustained by an opposite construction.

**Courts — case involving validity of order raising water rates held within original jurisdiction of Supreme Court.**

4. A majority of the courts are of the opinion, and it is *held*, that the instant case (relating to and involving the validity of an order purported to have been made by the board of railroad commissioners granting the Bismarck Water Supply Company a 60 per cent increase in rates, and which order it is asserted by the relators was made contrary to and without authority of law) is one within the original jurisdiction of the Supreme Court.

**Public service commissions — increase in rates of public utility may only be ordered after hearing.**

5. Under the Public Utilities Act (Laws 1919, chap. 193), an increase in rates of a public utility can be ordered only after hearing had on that question.

In the instant case it is *held* that a rate increase is void because it was made without notice and hearing.

Opinion filed January 4, 1921.

Application for an original writ to set aside, and restrain the enforcement of a purported order or regulation of the Board of Railroad Commissioners ordering an increase in the rates of the Bismarck Water Supply Company.

Writ granted.

*Newton, Dullam & Young, H. F. O'Hare,* and *Lawrence & Murphy,* for petitioners.

The supreme court has original jurisdiction of this cause. State ex rel. Granvole v. Porter, 11 N. D. 309; State ex rel. Buttz v. Lindahl, 11 N. D. 320; State ex rel. Mitchell v. Lawson, 13 N. D. 420; State ex rel. Baker v. Hanna, 21 N. D. 570. Cases where exercised, as to state boards, commissions and tribunals. State v. Archibald, 5 N. D. 359; State ex rel. Birdzell v. Jorgenson, 25 N. D. 539; State ex rel. Baker v. Hanna, 31 N. D. 570; State ex rel. Linde v. Taylor, 33 N. D. 76; State v. Packard, 32 N. D. 301; State ex rel. Linde v. Packard, 35 N. D. 298; State ex rel. Langer v. Kositzky, 38 N. D. 616.

This court may act as a court of equity. It may take testimony. Re Sidle, 31 N. D. 405, 154 N. W. 277.

It may issue all necessary writs and all necessary orders to effectuate its jurisdiction as assumed. State v. Archibald, 5 N. D. 359, 66 N. W. 234; State v. Nuchols, 18 N. D. 233, 20 L.R.A.(N.S.) 413, 119 N. W. 632; State ex rel. Brick Corp. v. District Ct. 24 N. D. 28, 32, 138 N. W. 988; State v. Langer (N. D.) 177 N. W. 414.

The mere filing of a petition for the removal of a suit which is not removable does not work a transfer. To accomplish this the suit must be one that may be removed and the petition must show a right in the petitioner to demand the removal. Stone v. State, 117 U. S. 430, 29 L. ed. 962.

It perhaps is immaterial whether the action of the board of railroad commissioners was legislative or judicial. This court in the case of Re M. St. P. & S. St. M. R. Co. 30 N. D. 227, following the Federal cases to which we have called attention, holds that the board in establishing rates acts legislatively.

The following authorities sustain the right to invoke certiorari in a case where the remedy by appeal proves inadequate. State v. Guinotte, 156 Mo. 513, 50 L.R.A. 787, 57 S. W. 281; State v. Whatcom County, 74 Wash. 601, 134 Pac. 183; State v. King County Sup. Ct. 26 Wash. 278, 66 Pac. 385; United States Standard Voting Mach. Co. v. Hobson, 132 Iowa, 38, 7 L.R.A.(N.S.) 512, 109 N. W. 458; R. R. Co. v. Lamb, 60 Ind. App. 409, 110 N. E. 997.

*Miller, Zuger & Tillotson* and *Simpson & Mackoff* (*Butler, Mitchell & Doherty,* of counsel), for Bismarck Water Supply Company.

This cause is not one within the original jurisdiction of this court. State v. Packard, 32 N. D. 301, 155 N. W. 666; State v. Taylor, 33 N. D. 76, 156 N. W. 561; State v. Hall, 35 N. D. 34, 155 N. W. 281; State v. Packard, 35 N. D. 298, 160 N. W. 150; State v. Packard, 168 N. W. 673.

The controversy between the city of Bismarck and the Water Supply Company was prior to the commencement of this proceeding, duly removed to the United States District Court, and the courts of the state of North Dakota have no longer jurisdiction to consider it. Judicial Code of the U. S. Comp. Stat. § 1010; Upshur County v. Rich, 135 U. S. 467, 477; Delaware County v. Diebold Safe & Lock Co. 133 U. S. 473; Fuller v. Colfax County, 14 Fed. 179; C. M. & St. P. R. Co. v. Drainage Dist. Co. 253 Fed. 491; Waha-Lewiston L. & W. Co. v. Lewiston-Streetwater I. Co. 158 Fed. 137.

"If the cause is removable and the statute for its removal has been complied with, no order of the state court for its removal is necessary to confer jurisdiction on the court of the United States, and no refusal of such an order can prevent that jurisdiction from attaching." Kern v. Huidekoper, 103 U. S. 485; Marshall v. Holmes, 141 U. S. 589; Mannington v. Hocking Valley R. Co. 183 Fed. 133.

CHRISTIANSON, Ch. J. This is an application for an original writ to have reviewed and set aside and annulled as unlawful and in excess of jurisdiction a certain order made by the board of railroad commissioners of this state on or about October 2, 1920, whereby the said board of railroad commissioners granted an increase in rates to the Bismarck Water Supply Company. The petition alleges that the city of Bismarck is a municipal corporation having a population of about 7,000; that on

June 23, 1919, the city commission, by resolution duly adopted, made the following complaints against the service rendered by the Bismarck Water Supply Company:

"(1) Unsanitary condition of reservoirs.

"(2) Unprotected condition of reservoirs.

"(3) Insufficient fire and water protection, in this that there is only one water pump which may at any time break down and repairs are difficult to procure, thus endangering the property, health, and lives of the citizens of Bismarck.

"(4) Plant is insufficient to take care of supply and demands of service.

"(5) There is an unnecessary delay in extending water mains after demand is made therefor.

"(6) There is no filtration plant.

"(7) The mixing chamber is not in fit condition to insure a proper mixture of the chlorine used to purify the water.

"(8) The rates are excessive for home consumption, lawns and gardens.

"(9) The water is muddy and full of sediment."

That such resolution was filed with the board of railroad commissioners; that thereafter the Bismarck Water Supply Company filed an answer to the effect that it denied generally and specifically each and every charge so made by the city commission against the Bismarck Water Supply Company; that the issues thus framed were the only ones before the board of railroad commissioners to determine; that after hearing and taking of evidence the board of railroad commissioners on or about October 2, 1920, "wrongfully and unlawfully and in excess of their jurisdiction and foreign to the issues created at said hearing," did make and file an order wherein it granted the Bismarck Water Supply Company permission to increase its rates in amounts, aggregating approximately 60 per cent increases in existing rates. (The order also contained other provisions relating to the matter mentioned in the charges filed by the city commissioners); that subsequently the city commissioners appealed to the district court from the entire order and determination of the railroad commissioners; that a determination of such questions will require a considerable length of time and that in the meantime the unlawful rates and increases purported to be authorized

by the board of railroad commissioners will be put into effect; that there are approximately 1,400 users of waters, including the municipality and the state; that the relators are resident taxpayers of the city of Bismarck, and users of water furnished by the Bismarck Water Supply Company.

It is further averred in said petition that the board of railroad commissioners did not at any time during the progress of said hearing initiate or conduct any examination relating to the increase of rates; and that no notice of said proposed increase in rates was given as required by chapter 192, Laws 1919, or at all. It is further averred that the law under which the board of railroad commissioners purported to act is unconstitutional and void; and that the said board of railroad commissioners has no legal authority or power whatever to exercise any control over, or to act upon or grant rate increases to, any utilities except railroad and street car companies.

It is further averred in the petition, "that said board of railroad commissioners is proceeding to act under the said chapter 192, Laws of 1919, and is prescribing rates for and making orders with reference to public utilities doing business in every community of the state of North Dakota. That it is constantly and continuously making orders of the character herein described under circumstances and conditions similar to those existing in the proceeding instituted as hereinbefore alleged for the purpose of securing a reduction of rates charged by the Bismarck Water Supply Company and requiring certain other acts and things to be done. That in its said proceedings every municipality, community, and citizen of the state is interested and affected, and that by reason of the premises the acts of the commissioners under said chapter 192 affect the rates and privileges and franchises of this state. . . . That the matters herein involved are of great public interest and of public concern and involve questions affecting the sovereign rights of the state and of said boards and officers and the operation of said state statute, and are not local in character but will affect each and every municipality and community in the state of North Dakota and the rights of all the citizens of such municipalities and communities with reference to their rights as against the action of public utilities, and of the state board of railroad commissioners pretending to exercise power to increase rates thereof. That the state of North Dakota is a user of such water in its state institutions at Bismarck."

The respondent, Bismarck Water Supply Company, appeared special-ly, and so appearing, moved the court:

"(1) To dismiss the alternative writ issued in this cause and all pro-ceedings herein and to vacate the restraining orders issued herein, on the ground that this court has no jurisdiction to entertain the petition, and on the further ground that this proceeding is not within the original jurisdiction of this court.

"(2) To dismiss all proceedings herein and to vacate the restraining orders issued in this cause as to the respondent, Bismarck Water Supply Company on the grounds that the controversy between the city of Bis-marck and the Bismarck Water Supply Company was, at the time of the issuance of the order by this court, duly pending in the district court of Burleigh county upon an appeal taken by the city from the deter-mination of the board of railroad commissioners; and that said Water Supply Company (which is a corporation organized under the laws of the state of West Virginia) had, prior to the filing of the petition in this court, requested that said cause be removed to the United States dis-trict court for the district of North Dakota, and submitted to, and filed for approval by, the district court a removal bond in due form."

The only question necessary to consider in connection with this mo-tion is the first one raised. If this action is one within the original jurisdiction of the court, then it is an action by the state, and not an action by the individuals who appear as relators. The original juris-diction is "reserved for the use of the state itself when it appears to be necessary to vindicate or protect its prerogatives or franchises, or the liberties of its people; the state uses it to punish or prevent wrongs to itself or to the whole people; the state is always the plaintiff and the only plaintiff, whether the action be brought by the attorney gen-eral, or, against his consent, on the relation of a private individual under the permission and direction of the court. It is never the pri-vate relator's suit; he is a mere incident; he brings the public injury to the attention of the court, and the court, by virtue of the power granted by the Constitution, commands that the suit be brought by and for the state. The private relator may have a private interest which may be extinguished (if it be severable from the public interest), yet still the state's action proceeds to vindicate the public right." State ex rel. Linde v. Taylor, 33 N. D. 76, 84, L.R.A.1918B, 156, 156 N.

W. 561, Ann. Cas. 1918A, 583; State ex rel. Bolens v. Frear, 148 Wis. 456, 500, L.R.A.1915B, 569, 134 N. W. 673, 135 N. W. 164, Ann. Cas. 1913A, 1147.

A suit by a state in one of its own courts cannot be removed to a Federal court, unless it is a suit arising under the Constitution or laws of the United States or treaties made under their authority. Germania Ins. Co. v. Wisconsin, 119 U. S. 473, 30 L. ed. 461, 7 Sup. Ct. Rep. 260. And "a suit cannot be said to be one arising under the Constitution or laws of the United States until it has in some way been made to appear on the face of the record that 'some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by an opposite construction.' " Ibid. The record in this case discloses that it does not arise under the Constitution or laws of the United States, or any treaty made under their authority. It arises under, and involves only a construction of, the constitution and laws of this state. So clearly the cause which it is sought to present to this court is not removable, provided it is one within the original jurisdiction of this court. Whether the controversy pending in the district court of Burleigh county between the city of Bismarck and the Bismarck Water Company is removable is not before us, and upon this question we express no opinion.

In connection with the objection to jurisdiction, it was else urged that under the provisions of the Public Utilities Act (Laws 1919, chap. 192), an appeal may be (and has been) taken from the determination of the board of railway commissioners, and that hence this court should in no event assume jurisdiction and determine the controversy attempted to be brought before it.

The question as to what causes are within the original jurisdiction of this court has been considered in many cases. No good purpose would be served by reviewing these cases here, and it would unduly lengthen this opinion to do so. The function and scope of the original jurisdiction was considered by this court quite fully, in State ex rel. Lofthus v. Langer, 46 N. D. 462, 177 N. W. 408. See also State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 383. The writer did not believe that this case was one within the original jurisdiction. Neither did he believe that the controversy so presented

was one within either the appellate or supervisory jurisdiction. In other words, the writer was of the opinion that in any view of the case it was, in the first instance, one for the determination of the district court. The writer, therefore, believed that the proceeding should be dismissed. These views, however, were not shared by a majority of the court. They were of the opinion that the cause presented is one within the original jurisdiction; and that this court ought to assume jurisdiction of the controversy as presented by the petition, and determine the validity of the order granting the increase in rates. Accordingly, the motion to dismiss the proceeding was denied and this case was set down for a hearing on the merits. Thereafter, the respondents, the Board of Railroad Commissioners and the Bismarck Water Supply Company, filed separate returns. The return of the Board of Railroad Commissioners is to the effect that the entire record in the matter in which the order complained of was made had been certified to the district court of Burleigh county. In the return, it is denied that the board has, in this case or any other case of similar nature, raised, lowered, or fixed rates for public utilities, or that it contemplates doing so in the future, without giving due notice of such intention as provided by chapter 192, Laws 1919, and after hearing therein. It is further averred that the decision of the board of railroad commissioners was made at a meeting of the board where all the members were present and that two of the members signed the order complained of, while the third member dissented therefrom.

In the return of the Water Supply Company, the jurisdictional questions, raised in the motion to dismiss, are again urged. It is admitted that the relators are taxpayers in the city of Bismarck and users of water therein. It is further admitted that the proceeding before the board of railroad commissioners was instituted upon the resolution set forth above and that the Water Supply Company filed the written answer hereinabove set forth. It is further averred that the board of railroad commissioners had full authority and power to ascertain the reasonableness of rates in said proceedings and to make the order which it did.

Upon the oral argument, the attorneys for the Bismarck Water Supply Company again pressed the jurisdictional objections; namely, that this is not a cause properly within the original jurisdiction of this

court; that a remedy by appeal is provided in the Public Utility Act; that review of the order can be had in that manner only; and that the writ prayed for does not entitle this court to review the validity of the increase in rates. These objections were all presented upon the argument on the motion to dismiss. There has been no change in the views of the different members of the court upon this question since the motion to dismiss was determined. The writer adheres to the views he then entertained and expressed. A majority of the court are of the opinion that this court has jurisdiction of the controversy and may and ought to determine the validity of the order increasing the rates.

This brings us to the merits of the controversy—whether the order made by the railroad commissioners purporting to increase rates of the Bismarck Water Supply Company was and is void as to persons affected thereby and not parties to the proceeding before the railroad commissioners.

It is conceded that the board of railroad commissioners has no power to regulate, control, or fix rates of the Water Company, except as such power is given by statute, for the Constitution does not profess to give the railroad commissioners any powers except such as "shall be prescribed by law." N. D. Const. § 83. Whatever power the board of railroad commissioners have to fix or change the rates of a public utility like the Water Supply Company is conferred by chapter 193, Laws 1919.

Sections 4 and 14 of the Act, provide: "The commissioners shall have the power, *after notice and hearing,* to enforce, originate, establish, modify or adjust and promulgate tariffs, rates, joint rates, tolls and charges of all public utility corporations and whenever the commissioners shall, after hearing, find any existing rates, tolls, tariffs, joint rates or schedules unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of this act, the commissioners shall, by an order, fix reasonable rates, joint rates, tariffs, tolls, charges or schedules to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any provision of law." Section 4. "No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules or classifications,

or service in force at the time this act takes effect, except after thirty days' notice to the commissioners, which notice shall plainly state the changes proposed, and, upon a showing before the commissioners and a finding by the commissioners that such increase is justified." Section 14.

The proceeding before the railroad commissioners was instituted under § 30 of the act which reads: "Complaint may be made by the commissioners of its own motion or by any corporation or person, chamber of commerce, board of trade, or any civic, commercial, mercantile, traffic, agricultural or manufacturing association or organization, or any body politic or municipal corporation, by petition or complaint in writing, setting forth any fact or thing done or omitted to be done by any public utility, including any rule, regulation or charge heretofore established or fixed by or for any public utility, in violation or claimed to be in violation of any provisions of law or of any order or rule of the commissioners. The commissioners shall fix the time when and place where a hearing will be had upon the complaint and shall serve notice thereof upon the complainant and the utility affected thereby not less than ten days before the time set for such hearing, unless the commissioners shall find that public necessity requires that such hearing be held at an earlier date, provided, that no complaint shall be entertained by the commissioners, except on its [their] own motion, as to the reasonableness of any rates or charges, of any heat, gas, electrical, water or telephone utility, unless the same be signed by the mayor, council, commission or other legislative body of the county, city, town or village, if any, within which the alleged violation occurred, or not less than fifteen consumers or purchasers or prospective consumers or purchasers of such heat, gas, electrical, water or telephone service."

The following section (31) provides: "At the time fixed for a hearing before the commissioners or a commissioner, or the time to which the same may have been continued, the complainant, and the utility or person complained of, and such corporations or persons as the commissioners may allow to intervene, shall be entitled to be heard and to introduce evidence."

The Public Utilities Act is replete with the requirement of notice and hearing. It recognized the right of interested parties to intervene

in hearings as to the reasonableness of rates instituted upon the complaint of city officials.  The proceeding before the railroad commissioners under consideration here was instituted upon a written complaint filed by the officers of the city of Bismarck.  The Water Supply Company denied the charges contained in the complaint.  It asked for no affirmative relief.  The issues before the board of railroad commissioners were those framed by the complaint and the answer.  It is true the railroad commissioners might have instituted a proceeding on their own motion, but this they did not do.  They did not intimate to the parties that they would attempt to adjudge except upon the issues presented to them.  They purported to sit in judgment upon the proceeding which the contending parties presented.  There was no demand for an increase in rates by the Water Supply Company.  There was no reason why any party interested in water rates in the city of Bismarck should anticipate that the hearing before the railroad commissioners could or would result in an increase in rates.  Certainly counsel for the Water Company had no idea that the hearing before the railroad commissioners might result in such increase.  For in their brief, submitted to the railroad commission at the conclusion of the hearing (which brief has been certified to this court as a part of the record), they said: "Section 4 of the act in question gives the commission authority after hearing, if they find any existing rates or schedules to be unjust, unreasonable, insufficient, or unjustly discriminatory, to fix reasonable rates to be followed in the future.  And if upon any hearing a public utility is asking to have its rates raised, above the maximum contained in its charter, such public utility shall furnish to the commission certain things enumerated in § 4.  *That part of the section can have no application to the instant case because the respondent in this case at this hearing is not asking to have its rates raised.*"

As we construe the Public Utilities Act, rate increases cannot be ordered except after notice and hearing.  And as we read the record certified to us there was neither notice nor hearing of a proceeding for an increase in rates here.  Hence, the order granting such increase is void.  See Beale & W. Railroad Rate Regulation, § 1143.  See also Railroad Comrs. v. Oregon R. & Nav. Co. 17 Or. 65, 11 Am. St. Rep. 778, 19 Pac. 702.

On the oral argument it was contended that the railroad commission-

ers are authorized to make investigation for themselves and to obtain the necessary information to enable them to act in those matters wherein the Public Utilities Act gives them power to act. The record here does not show that the railroad commissioners initiated any proceeding on their own motion. They purported to be hearing a definite controversy which was being submitted to them. Nor do we believe that the act empowers the railroad commissioners to make findings and orders upon specific investigations without affording interested parties notice and hearing. On the contrary we believe that the act clearly contemplates that notice and hearing shall be afforded in all cases where it is sought to change existing rates. If construed otherwise, the statute would be of doubtful validity. United States v. Baltimore & O. S. W. R. Co. 226 U. S. 14, 20, 57 L. ed. 104, 107, 33 Sup. Ct. Rep. 5; Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 525, 56 L. ed. 863, 868, 32 Sup. Ct. Rep. 535; Beale & W. Railroad Rate Regulation, § 1143.

It was also suggested on the oral argument that the railroad commissioners had authority to order an increase in rates if they found that to be necessary to enable the Water Supply Company to do some of the things which the city commissioners had asked that it be required to do. We do not believe this argument is sound. When in the determination of a matter submitted to a court it becomes apparent that, to make a full determination, other issues or parties are necessary, the court does not proceed to decide those matters in the absence of issues and parties, but requires issues to be formed and the proper parties to be brought in. While the board of railroad commissioners is an administrative body, it exercises quasi-judicial powers, and is subject to the requirement of due notice. If the board of railroad commissioners deemed it desirable, of their own motion, to take up and determine whether the rates of the Water Supply Company ought to be raised, it should have given notice and afforded hearing thereon before making a determination.

We express no opinion upon the questions actually involved in the proceeding initiated before the board of railroad commissioners upon the complaint of the city of Bismarck. That controversy is now pending in the district court of Burleigh county. But, for reasons already given, we are of the opinion that the question of an increase in rates

was not involved in the proceeding before the commissioners. No hearing has in fact been had before the railroad commissioners on that question; and in our judgment the order purporting to grant an increase in rates is null and void. And the writ of this court will issue restraining the respondents from enforcing the same.

ROBINSON, BRONSON, and GRACE, JJ., concur.

BIRDZELL, J. (concurring specially). My views on the question of the original jurisdiction of this court were fully expressed in the case of State ex rel. Lofthus v. Langer, 46 N. D. 462, 177 N. W. 408, and they have undergone no change since that case was decided. In my opinion, under the showing made in the returns in this case, as well as that made upon the argument in support of the petition, this cause is not properly one within the original jurisdiction of this court. I am, therefore, out of accord with the majority opinion in so far as it decides this to be a proper case for the assumption of original jurisdiction. However, as in the case of State ex rel. Lofthus v. Langer, supra, I deem it my duty to say that, since the majority has decided in favor of the original jurisdiction, it is proper for every member of the court to express his views on the merits of the controversy. On the merits I can add nothing to the principal opinion. I concur in all that is said therein with reference to the validity of the order of the board of railroad commissioners.

ROBINSON, J. (concurring specially). This is an original application to review and cancel an order of the railroad commissioners adding 60 per cent to the water rates of the city of Bismarck.

Objection is made to the original jurisdiction of the court on the ground that the case does not present a matter of public concern, and on the ground that an attempt has been made to remove the matter to the Federal courts. But the case does not present a question arising under the Constitution or laws of the United States. It is not removable. The case does present a question of public concern, because the jurisdiction assumed by the railroad commissioners extends not merely to the city of Bismarck, but to all other cities of the state and affects the public welfare. This court does not assume original jurisdiction

or issue original writs as a matter of course. Before issuing an orig-
inal writ and making an order for a stay of proceedings, the court does
well consider and decide on the propriety of taking jurisdiction, and
its decision is final.

The case presents only two questions: (1) Have the railroad com-
missioners any supervision over the affairs of cities or any right to de-
cide on matters which do not pertain to railroads? (2) If the rail-
road commissioners have any jurisdiction to fix the water rates of a
public utility above the maximum rates of its charter, did they have
it in this particular case? There is no claim that the commission has
any such power except under the Public Utility Act (Laws 1919,
chap. 191). Section 4 provides: The commissioners shall have power,
after notice and a hearing, to enforce, originate, establish, modify or
adjust and promulgate tariffs, rates, tolls and charges of all public util-
ity corporations. Also, that when any public utility corporation shall
ask to have the rates raised above the maximum rates of its charter, it
shall furnish the commission with data as follows: (1) The original
cost of all its property; (2) the date of the acquisition of such prop-
erty; (3) the amount of any money invested in the property; (4) the
amount of stock outstanding; (5) blue prints showing the location and
position of all mains, poles, lines, wires and all other property belong-
ing to the company, and such like.

Now on the record there can be no just claim of any compliance or
attempt to comply with § 4 of the act. The public utility company did
not file with the commission any petition for an increase of rates.
The commission did not give any notice of an application and a hear-
ing for an increase of rates. The city did make application to the com-
mission for an order to compel the utility company to render better
service and did allege that in many respects the service rendered was
defective, the water muddy and unfit for use. And after hearing on
that petition, and on that only, the commission made the order in ques-
tion. There was no petition for an increase in rates, no hearing or
notice or any attempt to give notice in regard to the same. Hence, the
order made by the commissioners is contrary to the first principles of
law and it is void.

The further question is: Have railroad commissioners any super-
vision over the affairs of cities and a right to fix the water rates of a

public utility above maximum rates of its charter? The railroad commissioners are constitutional officers and it is hard to say on what principle they can be made beasts of burden. If the legislature may impose on them the duty of fixing rates and charges for public utilities, why not the duty of working six hours a day on the highways? We all know that if the commission do their duty they must, during the business hours of every day, give all their time to the consideration of railroad matters. We know that if the commissioners run around the country and give a large portion of their time—as they have been doing—to hearings in regard to rates, charges, and the conduct of public utility corporations they must neglect their duties as railroad commissioners. We know that a city is competent to contract with public utility companies in regard to rates that may be charged for services and when, as in this case, a city gives to a utility company a charter authorizing it to use the streets of the city and to put down and construct water mains on condition that it shall furnish water at a sum not to exceed a prescribed maximum rate, and that charter is accepted, it constitutes a contract between the city and the company, and the contract is protected against impairment by the Constitution of the United States. The legislature may not pass any law impairing the obligation of contracts and, of course, it may not authorize a commission to do what it is prohibited from doing.

Pursuant to § 130 of the Constitution, the legislature has by law provided for the organization of municipal corporations. Each city, by its council or commission, has power to control its own finances and property and has power to make internal improvements and to engage in any industry, enterprise, or business the same as a natural person. A city is a self-governing, corporate entity, and its contracts with public utility companies are not subject to review or modification by any railroad commission. A contract between a city and a public utility company is protected against impairment just as much as a contract between two natural persons. Hence the order for a 60 per cent increase of water rates is void.

Order reversed and cancelled.