### LORAIN STEEL CO. v. UNION RY.

(Circuit Court, S. D. New York. October 26, 1908.)

STREET RAILROADS (§ 58*)—RECEIVERS—OPERATION OF ROAD.

A receiver appointed for the property of a street railroad company in a foreclosure suit will not, unless in case of strong necessity, be authorized to discontinue the operation of cars over a portion of the line covered by its franchise, where the effect would be to forfeit its franchise, even though the track over such portion is owned by another company to which he must pay rent and its operation would be unprofitable.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

In Equity. On petitions of Arthur H. Wadick and another for instructions to receiver for Union Railway.

Stetson, Jennings & Russell, for complainant.
Bowers & Sands, for defendant.

LACOMBE, Circuit Judge. These are applications by residents in the district affected for modification of an order made in conformity to

decision of this court filed June 10, 1908 (165 Fed. 494). The following quotation from that decision sets forth the question then presented:

"The Westchester Electric Railroad Company has a line of track extending south on White Plains road to Fifteenth street, Williamsbridge. From that point south the lines of the Union Railway extend over White Plains road, Olin avenue, and Webster avenue. The Westchester Road runs its cars over Union tracks south of Fifteenth street, and the Union runs its cars on Westchester tracks north of Fifteenth street. Since there is thus a joint use of each other's tracks between the New York, New Haven & Hartford Station at Mt. Vernon and West Farms and Bedford Park Station, the transfer act of 1885 (Laws 1885, p. 525, c. 305) requires the roads there operating to exchange transfers for a single fare. The receiver wishes to stop such single-fare transfers, and, in order to do so without violating the transfer act, proposes to cease operating Union cars on Westchester tracks, and to prohibit the further use of Union tracks by Westchester cars. There has been no suggestion upon this hearing that such a change of operation was not within the power of the receiver of either road; there is no contract between them securing to either the use of any portion of the other's tracks."

Fifteenth street, Williamsbridge, is now 229th street, New York City, and will be so referred to hereafter.

After various negotiations conducted in compliance with the suggestion of the court, and which resulted in no agreement, the receiver of Union Railway applied for a permit to open street surface so as to put in a switchback at 229th street. Such permit was refused. Why it was refused does not appear. The place named is the northern terminus of the line built under a franchise from the city of New York to Union Railway, where a switchback would seem to be essential to operation. It was stated unofficially on the argument that the permit was refused without any inquiry as to the legal questions involved, and the representative of the corporation counsel confirms this by stating that the law department was not asked to advise the borough president as to the law. No switchback being provided at 229th street, the Union Railway receiver early in October began to run his cars back from 233d street, using an old switch, and the Westchester Railway receiver ceased running cars south of 233d street.

It now appears that two franchises, which have an important bearing on the situation, were not called to the attention of the court on the argument in June. The Union Railway receiver did not know of their existence, not finding any reference to them in the documents turned over to him. It is surprising that no one else called attention to them, since the hearing was a general one, at which every one in any way interested was invited to present anything he pleased in opposition to receiver's petition. However, no one is fairly subject to any criticism for not presenting this evidence sooner, and the new questions thereby presented can be disposed of now as well as then.

Prior to June 5, 1895, the White Plains road from 229th street to the Mt. Vernon boundary ran through the village of South Mt. Vernon, or Wakefield, which was on that date annexed to the city of New York. On February 18, 1893, that village granted a franchise to the Mt. Vernon & Eastchester Railway Company for the operation of a street railway on the White Plains road from Mt. Vernon to (what is now) 233d street. That franchise was abrogated October 13, 1893, and regranted April 14, 1894. It passed by assignment to the West-

chester Electric Railway Company. On the last-named date the same village granted a franchise for the operation of a street railway on the White Plains road from Mt. Vernon to (what is now) 229th street to the Union Railway Company. The details of these franchises need not now be stated, except to note that they provided that but one set of tracks should be built, over which cars were to be operated by both railway companies. Under these franchises the Union Railway built from 229th to 233d street, and the Westchester Railway from 233d street to Mt. Vernon. There was some dispute on the argument as to who actually built the portion between 233d and Mt. Vernon, but it was finally conceded by every one that the Westchester Company paid for building it and now owns the structure.

Manifestly, these facts present the question as to operation of the railway line through the territory which was formerly South Mt. Vernon under a very different aspect. The Westchester Railway has no authority to run its cars from 233d street to 229th street except solely by some lease, license, or similar arrangement with the Union Railway. The Union Railway has a unitary franchise for the entire distance from 229th street to the north line of South Mt. Vernon, and certainly cannot operate a fraction of the line, and fail to operate the rest, without exposing itself to forfeiture of the entire franchise.

The question presented here is whether the receiver of Union Railway shall so operate its cars as to invite forfeiture of this South Mt. Vernon franchise. This is a different proposition from that discussed in the opinion of June 10th, as to possible forfeiture of the Westchester Railway and Yonkers Railway franchises. They were roads independent of the Union Railway, and this court assumed that in dealing with the question of the forfeiture of their franchises the local authorities would deal justly with them and give due weight to the consideration that their derelictions, if any, were the result of causes beyond their control. Here, failure to operate would be a complete assent to forfeiture.

In the answer of Union Railway receiver it is stated that he can run no cars over the structure laid in the White Plains road by the Westchester Railway Company without paying that company or its receiver compensation for the use of it, and that under such circumstances the operation of the road would be unprofitable. Upon the argument the representatives of the bondholders and stockholders expressed the same opinion, and it may be assumed that such operation would be unprofitable. But there is a great difference between the election of a receiver, so often approved by the courts, not to accept the obligations of an unprofitable lease, and the abrogation for all time of a franchise, although it may yield no present return. There may be cases where the court would approve of such a course upon the request of all interested financially in the property; but the case would have to be a very strong one, stronger than what we have here. This franchise is not limited in time, while the receivership is temporary; before many months, either through reorganization or by purchase at foreclosure sale, the property will have passed out of the court's into owners' possession. So far as the record now before the court shows, the loss and fixed charges are not so great as to cripple the receiver-

ship financially to such an extent that proper service elsewhere in the system cannot be rendered.  Operation under this franchise does not bring the Union and Westchester Roads under the terms of the transfer statutes, because when the Union Railway receiver runs his cars to the north line of South Mt. Vernon he does so by virtue of a grant from the local authorities, not at all by virtue of any lease license or permission of the Westchester Railway; the compensation he pays it for the use of its structure is not the sort of contract which that statute contemplates.  Moreover, the language of section 104 of the same statute (Laws 1892, p. 1406, c. 676) excludes a road which operates, as the Westchester does, in more than one city or village.

Undoubtedly the present situation presents complications by reason of the circumstance that the Union Railway receiver is obligated under its franchise to operate cars on the structure of another road, which may try to insist on onerous terms and conditions for the use of such structure.  But the franchises granted by the village of South Mt. Vernon provided that, if the two companies could not agree upon terms and conditions of joint operation, the questions in dispute should be decided by the trustees of the village.  Presumably such powers of arbitration have passed to some present local authority, to whom any dispute as to terms and conditions may in the first instance be most appropriately submitted.

The receiver of Union Railway should therefore proceed to carry passengers under the South Mt. Vernon franchise for the whole distance from 229th street to the north line of South Mt. Vernon, under whatever arrangements as to cars, service, and transfer of passengers he may be able to settle upon with the receiver of the Westchester Railway, and in conformity with the terms of that franchise.