### LORAIN STEEL CO. v. UNION RY. CO.

(Circuit Court, S. D. New York. November 29, 1909.)

STREET RAILROADS (§ 58*) — OPERATION BY RECEIVERS — TRAFFIC CONTRACTS WITH OTHER COMPANIES.

    Authority granted to the receivers of a New York City street railway company to enter into a proposed traffic arrangement with a suburban company, by which each company is given the right to run its cars over a portion of the line of the other to carry passengers without change and for a single fare to points on such lines.

    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 135; Dec. Dig. § 58.*]

In Equity. Suit by the Lorain Steel Company against the Union Railway Company. Application by receivers for authority to make traffic arrangement. Authority granted.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Stetson, Jennings & Russell, for Lorain Steel Co.
Evarts, Choate & Sherman, for receiver of Union Ry. Co.
Francis K. Pendleton, for City of New York.
Bowers & Sands, for Union Ry. Co.

LACOMBE, Circuit Judge. This is an application by the receivers of the Union Railway Company for authority to enter into a proposed traffic agreement with the Westchester Electric Company. The object of the agreement is to improve the conditions of traffic between the Bronx and Westchester as they were left after severance of old relations between the two companies. A narrative of the occurrences which have led to this agreement will be found in prior decisions of this court. 165 Fed. 494; 165 Fed. 500.

The bondholders have been notified of this application, and make no objection. All other parties in interest unite in the application. Under the proposed agreement Westchester Electric Railway cars will carry their passengers to the termini, in the Bronx, of subway and elevated railroads without collecting an extra fare from them, and Union Railway cars will carry their passengers to the Mt. Vernon station of the New York, New Haven & Hartford Railroad in the city of Mt. Vernon without collecting an extra fare. The only opposition is made by the city of New York, which insists that each road should operate only to the boundary line between Bronx borough and Mt. Vernon, where passengers going further would have to change cars and pay an extra fare.

It is suggested that the proposed arrangement will be more beneficial to the residents of Westchester than to those who live in the Bronx; indeed, it is asserted that "no benefits will result to residents of the Bronx." This assertion is not persuasive. There will certainly be many residents of the Bronx who may wish to go to the city of Mt. Vernon, and it will undoubtedly benefit them to be carried there without change of cars for a single fare. Apprehension is expressed that as a result of the new arrangement the Union Railway will run fewer cars on the White Plains road, because many passengers will be carried on that road to the termini of elevated and subway by Westchester Railway cars. But, if too few cars are run by the Union Railway—which is not likely, since it will be competing with the Westchester road and can take fares only from the passengers carried by itself—the Public Service Commission will undoubtedly require more to be put on.

It is further suggested that the Union Railway, in order to handle the traffic in the Bronx, should "be as sound financially as possible." It is certainly hoped that the future operator of this road, whether it be a reorganized or a new company, will be sound enough financially to render proper service; but it is not thought that the making of this proposed traffic agreement will operate to impair its solvency.

Finally, it is suggested that the city's percentage of gross receipts may be less, because some passengers, who otherwise might be carried on Union Railway cars, will be carried on Westchester cars. Even if this were so, the advantages which will accrue to the traveling public by the new arrangement are of much more importance than the

trifling shrinkage in the amount realized to the city by the 3 per cent. of gross receipts of the Union Railway. Moreover, as pointed out in the brief, the city contends that under the law it will be entitled to a similar percentage on passengers carried by the Westchester cars when running within the city limits. If this contention be sound, there will be no shrinkage.

The agreement will terminate an unfortunate situation apparently to the satisfaction of all parties interested, and it is a matter of congratulation that the communities in Westchester and the representatives of the two roads have been able by mutual concessions to improve traffic conditions at the point in question.

The application is granted, the agreement approved, and receiver authorized to make the proposed arrangement for giving security to the city of Mt. Vernon and the village of Pelham Manor.