**GREGG CARTAGE & STORAGE CO. et al. v. UNITED STATES et al. (NORTH-EASTERN TRANSPORTATION CO., Intervener).**

Civil Action No. 20369.

District Court, N. D. Ohio, E. D.

Feb. 20, 1941.

Howell Leuck and Bingham W. Zellmer, both of Cleveland, Ohio, for plaintiffs.

Frank Coleman, Atty., Department of Justice, of Washington, D.C., and S. R. Brittingham, Sp. Asst. to Atty. Gen., for the United States.

Daniel W. Knowlton and E. M. Reidy, both of Washington, D. C., for the Interstate Commerce Commission.

Before ALLEN, Circuit Judge, and JONES and WILKIN, District Judges.

PER CURIAM.

This action was brought under Sec. 41 (28), 43–48, Title 28 U.S.C., 28 U.S.C.A. §§ 41 (28), 43–48, to set aside, annul or suspend an order of the Interstate Commerce Commission which denied the plaintiff's application for certificate of convenience and necessity, as provided for in Sec. 306(a), Title 49 U.S.C., 49 U.S.C.A. § 306 (a).

The Intervenor, Northeastern Transportation Company, claims to have succeeded to the rights and interests of the plaintiff by virtue of sale and assignment from the receiver of the bankrupt estate of the plaintiff. Sec. 45a, Title 28 U.S.C., 28 U.S.C.A. § 45a.

There is no dispute as to the essential facts. The question presented is whether the ruling upon the facts by the Commission is justified in law.

The undisputed evidence shows that the plaintiff was in operation on June 1, 1935, and was therefore entitled to the rights specified in Sec. 306(a), Title 49 U.S.C., 49 U.S.C.A. § 306(a), known as "grandfather" rights. On February 12, 1936, the plaintiff filed an application for certificate of authorization. Plaintiff was at that time insured against public liability by the Central Mutual Insurance Company, and in January, 1937, such insurance company was adjudged a bankrupt and ceased payment of all claims, leaving the plaintiff with about $200,000 of liabilities. Being unable to discharge such obligations, the plaintiff asked for the appointment of a receiver in the common pleas court of Cuyahoga County, Ohio, on October 4, 1937. At the same time creditors filed a petition in bankruptcy, and the plaintiff was adjudged bankrupt by this court (West, J.). On October 14, 1937, plaintiff made application to the Interstate Commerce Commission for permission to suspend operations without prejudice to its "grandfather" rights. Such permission was denied for want of authority by the Commission. On October 30, 1937, a receiver was appointed for the bankrupt estate, and, on December 6, 1937, the good will and assets of the plaintiff, including its rights under pending applications with the Commission were sold by the receiver at public auction to the Intervenor for $850.

The state court receiver, between October 5 and October 30, confined his operations to deliveries of shipments then en route. No new business was accepted. The federal court receiver sought no authority to continue operations and confined his efforts to liquidating the business. After sale, the federal court receiver and the Intervenor filed a joint request that the Intervenor be substituted as applicant for plaintiff's "grandfather" rights. Action on the application for substitution was held in abeyance by the Commission pending determination of plaintiff's original application. Pending determination of such applications, no operations were engaged in by the Intervenor, although it had asked permission to file tariffs and resume service.

The original application was referred to an Examiner, who, on December 17, 1937, recommended allowance of the applica-

tion. The matter was referred again to an Examiner for further hearing on the question of "discontinuance of operation". Hearing was had on May 4, 1938, and on June 29 the Examiner recommended that applicant be granted a certificate because the interruption in service was one beyond applicant's control. In November, 1938, the application and the Examiner's report were reviewed by Division 5 of the Commission and the application was denied. On December 12, 1939, after review by the full Commission, the decision of Division 5 was sustained, upon the ground that the interruption of service following bankruptcy was fatal to applicant's rights.

Section 306(a) provides that a carrier in operation on June 1, 1935, shall be granted a certificate provided it has operated bona fide since that time. But it excepts from the requirement as to operation "interruptions of service over which the applicant or its predecessor in interest had no control". The plaintiff and the intervenor contend that the evidence reveals a state of facts "over which the applicant or its predecessor in interest had no control". It is their view that the interruption of service was due entirely to the failure of the insurance company, which created a condition clearly beyond their control.

The Commission, however, declined to look beyond the bankruptcy. It held bankruptcy to be a matter within the control of the applicant without considering the causes of bankruptcy. Such a ruling by the Commission is the adoption of a proper administrative policy or the application of a rule of law, and in either case it seems to be a proper exercise of its authority and not subject to change by this court. A line of demarcation must be drawn somewhere, and bankruptcy seems to be a reasonable point on which to establish it. If failure of the company insuring the applicant should be held to be reason for exonerating the applicant, then responsibility for countless other causes of bankruptcy would also have to be determined. Even if it were conceded that the applicant had no responsibility regarding the insurance company, it could hardly be said that it had no control over the large amount of accident claims filed against it.

The rule or policy established by the Commission seems supported by the holding of the Supreme Court in the case of Chicago Auditorium Association v. Central Trust Co., Trustee, 240 U.S. 581, 591, 36 S.Ct. 412, 415, 60 L.Ed. 811, L.R.A.1917 B, 580, in which the court said: " * * * bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt". When the court said: "We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement, within the doctrine of Roehm v. Horst, supra [178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953]", it established an analogy for the Commission's rule that bankruptcy is within the control of the applicant.

The plaintiff and intervenor point out that if the original application had been acted upon promptly by the Commission, a certificate would have been granted, and that then it could not have been revoked unless the holder thereof had willfully failed to comply, within a reasonable time, not less than thirty days, with a lawful order of the Commission, commanding obedience to the law. Sec. 212(a). This cannot be denied. If the application had been acted upon between February 12, 1936, the date of its filing, and October 5, 1937, the date of bankruptcy and interruption of service, it no doubt would have been allowed.

The evidence, however, does not disclose that the failure of the Commission to act upon the application within that time was arbitrary or intentional. The number of motor carriers entitled to "grandfather" rights was so great that all their applications under Section 306(a) could not possibly have been considered within such period. When in due course the Commission came to the consideration of plaintiff's application, it found that there had been an intervening interruption of service. That, so the Commission held, was as fatal as if applicant had not been in operation on June 1, 1935. The Commission construed the words of the statute "and has so operated since that time" to require continuity of operation from June 1, 1935, to the date of the determination of the application. The Commission had provided in Rule 6 of the regulations governing transfers that "the transfer of any operating right under which operations are not being conducted at the time of the proposed transfer will be approved only upon a showing that the cessation of operations was caused by circumstances over

which the holder of such operating rights had no control".

■ The Commission declined in this case, as it had in former cases, to determine the rights of the applicant as of the date of the filing of the application. Atlantic Motor Exp., Inc., Common Carrier Application, 12 M.C.C. 576, 579, 580. It is argued that this practice of the Commission varied from the strict practice of courts at common law. But even the courts have liberalized the practice in order that judgments and decrees might be influenced by conditions at the time they are made. Rule 15, Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This court cannot say that the rule of practice adopted by the Commission has no rational basis or is contrary to law. Congress declared the purpose and policy of the Motor Carrier Act, 1935, to be to "promote adequate, economical, and efficient service by motor carriers". Section 302. Continuity of operation is necessary to such service, and the requirement of continuity is not dispensed with when the application for a certificate is filed. The Commission is an administrative agency and its proper function requires a different procedure from that of courts of law. When the sale from plaintiff to intervenor was made, the "grandfather" rights had been lost through suspension of operation, and such rights had therefore been lost before the application was heard. Prior to the granting of the certificate the right of the plaintiff was merely tentative or inchoate and was lost by disuse. It would be unreasonable to expect the Commission to grant the application and then immediately start proceedings to revoke it. When the Commission refused permission to suspend, the applicant should have realized that operation was necessary to preserve "grandfather" rights.

This court cannot agree with the statement 'that the ruling of the Commission is contrary to the intent of Congress. The argument was advanced that: "If such interruptions in service are to be construed as putting an end to 'grandfather' rights of carriers * * * then, where such a carrier goes into receivership or bankruptcy, and such an interruption occurs, it would be impossible for the carrier to come out of receivership and resume operations; * * * if a corporation, it could not be reorganized under the corporate reorganization provisions of the Bankruptcy Act,

and creditors could realize nothing from 'grandfather' rights, however valuable."

■ If, in such circumstances, the continuation of operations should seem warranted, the court having jurisdiction of the receivership or the bankruptcy could order such continuation at the very time that it took jurisdiction, and such operation would be lawful pending determination of the application for a certificate. Sec. 306(a). Bankruptcy Act, Secs. 2, 115, 112, Title 11, Secs. 11, 515, 512, U.S.C., 11 U.S.C.A. §§ 11, 515, 512; Lorain Steel Co. v. Union Ry., C.C., 165 F. 500; Pomeroy's Equity Jurisprudence, 4th ed., Sec. 1622.

■ In this case the condition of the bankrupt did not warrant a request for permission to operate. The bankrupt was insolvent and had no insurance. The number of claims against it indicated the inadvisability of an order allowing operation without public liability insurance. In such case, the plaintiff's "grandfather" rights were lost, and the creditors must of course bear that loss along with the other results of bankruptcy. A sound public policy has always considered continuity of service necessary for the continuation of a franchise to use the public highways. Congress definitely expressed this public policy in the Motor Carrier Act. If the applicant in this case had continued its operations, its "grandfather" rights would have been preserved until the time of hearing the application. But, as the Commission said: "While the parties seem to have acted with reasonable diligence in pressing forward the proceedings necessary to the sale of the operating rights, they failed to preserve the existence of the subject matter of the sale by maintaining the continuity of the actual operations after every necessary preliminary had been accomplished." (p. 20)

No sufficient reason is presented for interfering with the finding of the Commission, "that applicant, because of the described interruption in service, has failed to establish the right to a certificate or permit under the 'grandfather' clauses of the Act".

There were in fact three applications before the Commission, Nos. MC—51204 and MC—51088, both seeking certificates to authorize operations as a common carrier, and No. MC—51089, seeking a license to authorize operation as a broker. The Commission said (Division 5): "With respect to applicant's request for a broker's license,

it should be noted that any rights which it may have had to continue brokerage operations cannot be transferred or sold to another party, *Spencer Broker Application,* 8 M.C.C. 141; and we conclude that applicant, being bankrupt, properly could not be granted such a license." (p. 261).

This court finds no reason to set aside, annul or suspend the order of the Commission.