**AUCLAIR et al. v. UNITED STATES et al.**

Civ. No. 2247.

District Court, D. Massachusetts.

June 10, 1947.

Powers & Hall and Leon F. Sargent, all of Boston, Mass., and John H. Sanders and Robert W. Upton, both of Concord, N. H.. for plaintiff.

Richard W. Hall, Robert J. Fletcher and Parker Brownell, all of Boston, Mass., for defendant Boston & Maine Transp. Co.

William T. McCarthy, U. S. Atty. of Boston, Mass., and Edward Dumbauld, Sp. Asst. to Atty. Gen., for defendant United States.

E. M. Reidy, Asst. Chief Counsel, and Daniel W. Knowlton, Chief Counsel, both of Washington, D. C., for Interstate Commerce Commission, intervenor.

Before MAHONEY, Circuit Judge, and SWEENEY and HEALEY, District Judges.

HEALEY, District Judge.

This is an action brought under 28 U.S. C.A. § 41 (28) to vacate, set aside and annul an order of the Interstate Commerce Commission granting certificates of public convenience and necessity to the Boston & Maine Transportation Company (hereinafter referred to as the Transportation Company) to operate as a common carrier by motor vehicle of general commodities over certain public highways in Maine, New Hampshire, Vermont and Massachusetts.

Answers were filed by the Transportation Company, the United States, and the Interstate Commerce Commission as an intervening defendant.

The plaintiffs, with the exception of the New Hampshire Truck Owners' Association, are common carriers by motor vehicle over public highways in Maine, New Hampshire, Vermont and Massachusetts, holding certificates of public convenience and necessity granted by the Interstate Commerce Commission. The plaintiff New Hampshire Truck Owners' Association, is a voluntary corporation organized under the laws of the State of New Hampshire and has as members the other plaintiffs and

other common and contract carriers by motor vehicle.

The Transportation Company, on or about February 11, 1936, filed with the Interstate Commerce Commission two applications (MC-75871-2) under the "grandfather clause" of the Motor Carrier Act of 1935, 49 U.S.C.A. § 306(a), for certificates of public convenience and necessity to continue alleged operations as a common carrier by motor vehicle over certain routes and highways in Maine, New Hampshire, Vermont and Massachusetts. This application was duly referred to Paul R. Naefe, Examiner. He filed a report as of May 19, 1938 recommending that the applications be denied. On July 8, 1938, the Transportation Company and the Boston & Maine Railroad filed exceptions to the said report of the Examiner.

The applications in due course, came on for hearing before Division 5 of the Interstate Commerce Commission on October 26, 1938. On October 10, 1941, Division 5 filed its report, Eastman, Chairman, dissenting, denying the applications. Upon petition by the Transportation Company, the proceedings were reopened for reargument and reconsideration, and the order entered by Division 5 was vacated and set aside.

The applications came on for rehearing before the entire Commission on February 11, 1942. On August 10, 1942, the Commission, Commissioners Lee and Rogers dissenting, filed its report granting the Transportation Company certificates of public convenience and necessity to operate over certain routes and highways, as set forth in appendix A of said report and order, effective September 30, 1942. (34 MCC 599).

The plaintiffs contend that the Commission erred in its order and that said order is based upon erroneous findings, rulings and conclusions. They pray "that said findings, rulings, conclusions and orders of the Interstate Commerce Commission be vacated, set aside and annulled; that it be adjudged and decreed that said Boston & Maine Transportation Company was not a common carrier by motor vehicle by virtue of the operations * * * " which were the subject of the Commission's orders and

"that the said Boston & Maine Transportation Company is not entitled to a certificate of public convenience and necessity by virtue of said operations, and for such other and further relief as may be just."

The United States of America and the Interstate Commerce Commission contend that the plaintiffs are not parties in interest having any standing to maintain this suit;

1. because they are merely asserting rights belonging to the Big Three, Inc., which is not a party to this action; and

2. because the plaintiffs were not parties to the proceedings before the Commission.

■ While the plaintiffs, other than the New Hampshire Truck Owners' Association, were not parties to the proceedings before the Commission, they are and were competitors of the Transportation Company over the routes in question and are, therefore, parties in interest qualified to bring this action. Alton R. et al. v. United States et al., 315 U.S. 15, 19, 62 S.Ct. 432, 86 L.Ed. 586.

And the fact that they did not appear in the proceedings before the Commission does not affect their rights to maintain this suit. Edward Hines Trustees v. United States, 263 U.S. 143, 147, 44 S.Ct. 72, 68 L.Ed. 216; Interstate Commerce Commission v. Diffenbaugh, 222 U.S. 42, 49, 32 S. Ct. 22, 56 L.Ed. 83; Schenley Distillers Corporation v. United States, D.C., 61 F. Supp. 981.

■ The order of the Interstate Commerce Commission can be vacated, set aside or annulled only if it is based upon findings of fact which are not supported by substantial evidence or if its rulings and conclusions are found to be arbitrary or capricious or the result of an erroneous interpretation of the law. Chicago, St. P. M. & O. R. Co. v. United States, D.C., 50 F.Supp. 249, 322 U.S. 1, 64 S.Ct. 842, 88 L.Ed. 1093; Gregg Cartage & Storage Co. v. United States, D.C., 42 F.Supp. 266, 316 U.S. 74, 62 S.Ct. 932, 86 L.Ed. 1283; Watson Bros. Trans. Co. v. United States, 50 F.Supp. 762, 768; Moore v. United States, D.C., 41 F.Supp. 786, 791, 316 U.S. 642, 62 S.Ct. 1036, 86 L.Ed. 1128.

■ In the instant case, we do not have before us all of the evidence which was

presented to the Commission and upon which it based its findings of fact.[1] We, therefore, are not in a position to conclude that the Commission's findings of fact are not supported by substantial evidence. Mississippi Valley Barge Line Co. v. United States et al., 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260; Lubetich v. United States, D.C., 39 F.Supp. 780, 315 U.S. 57, 62 S.Ct. 449, 86 L.Ed. 677.

Thus we are only entitled to consider whether or not the rulings, conclusions and order of the Commission were supported by the findings as made by it. Lubetich v. United States, D.C., 39 F.Supp. 780.

And whether or not those rulings, conclusions and order were the result of an erroneous interpretation of the law.

The Commission's findings of facts pertinent to the applications here in question are as follows:

"Findings of Facts

"The transportation company, a wholly owned subsidiary of the railroad, was incorporated in 1924. It was registered under the code of fair competition for the trucking industry on June 12, 1934. Prior to June 1, 1935, it was authorized by State authorities to engage in intrastate commerce, as a common carrier by motor vehicle, over all the routes in Maine, Vermont, and Massachusetts, and in interstate commerce over all the routes in Maine, Vermont, and Massachusetts as described in appendix A to the prior report with a minor exception in Maine, which authority was received subsequent to June 1, 1935. Prior to June 1, 1935, it was also authorized to operate motor vehicles for the transportation of property as a contract carrier in Massachusetts, and in Maine between certain points and over certain routes. In 1935, as a contract carrier, it also had certain trucks registered in New Hampshire for service between certain points and over certain routes.

"Since 1925, the transporation company has solicited freight from the general public for its own account, holding itself out as a common carrier by motor vehicle of general commodities, with certain exceptions. Year-round service has been provided between the points and over the routes described in appendix A of the prior report. In November, 1934, it issued a freight circular offering direct motor-truck service to and from numerous points in Maine, New Hampshire, Vermont, and Massachusetts. Prior to the enactment of Part II of the Act, it published joint rates with water carriers applicable to and from numerous points in the above-named States. Prior to April 1, 1936, tariffs containing these rates were filed with the United States Shipping Board, and thereafter, with us. On March 2, 1936, it issued its local class-rate tariff and its local commodity tariff to become effective April 1, 1936. These tariffs provided rates between numerous points in Maine, New Hampshire, Vermont, and Massachusetts.

"All shipments solicited by the transportation company have been receipted for on its bills of lading and delivered on its receipts. The transportation company assumed full responsibility for each shipment from the time it was received until it was delivered to the consignee. Claims for loss or damage have, in every instance, been filed against the transportation company. In May, 1935, and in March 1937, 18,476 and 25,609 interstate shipments, respectively, moved on the transportation company's billing from and to points embraced in its application. In May 1935, shipments moved from 97 points to 181 points, and in March 1937, from 101 points to 192 points.

"Prior to January 1, 1936, neither the transportation company nor the railroad owned or operated any motortrucks. All the shipments moving on the transportation company's billing were transported in motor vehicles owned and operated by 7 motor carriers * * * The motor car-

---

[1] The only evidence presented here which the Commission also had before it was (1) copy of agreement between the Transportation Company and Big Three, Inc., (2) Findings of the Examiner, (3) Exceptions filed by Transportation Company and Boston & Maine Railroad to the Examiner's Report, (4) Report of Division 5.

riers providing the service collected, receipted, and delivered the freight on * * * the transportation company's * * * documents, and collected the charges, remitting the same * * * to the transportation company * * *

"The written contract, in effect, on June 1, 1935, between the transportation company and Big Three, among other things, required the latter to provide sufficient motortrucks and trailers for the purpose of transporting freight for the transportation company at and between such points in Maine, New Hampshire, Vermont, Massachusetts, and New York as the transportation company might designate; to provide drivers, but no other labor, for the vehicles furnished; to maintain the equipment furnished in a proper condition, satisfactory to the transportation company; and to abide by and conform to all rules, regulations, and instructions that might be issued by the transportation company so far as the same might apply to work performed by Big Three under the contract. The latter was also required to furnish a bond or other security, to indemnify the transportation company and the railroad against loss of, or damage to, cargo from any cause while in its possession; to indemnify the transportation company against any loss that it might sustain on account of the failure of the officers, employees, or agents of the Big Three to collect and account for any moneys which should be collected by it in connection with the shipments transported; and to furnish cargo or 'in transit' insurance, in the amount of $25,000 per vehicle, payable to the transportation company or Big Three as their interests might appear. Big Three was further required to indemnify and save harmless the transportation company and the railroad from any suits or claims made against them on account of death, personal injury, or property damage arising from the operation of the vehicles; to furnish liability insurance covering the operation of such vehicles; and to provide for workmen's compensation insurance in respect of its employees.

"The transportation company, on the other hand, agreed to employ on regular working days a minimum of 30 trucks, 18 tractors, and 59 trailers at the hourly and mileage charges specified in the contract, with the provision that effective January 1, 1936, the minima would be reduced to 21 trucks, 8 tractors, and 44 trailers in the event the transportation company exercised the option to buy the equipment, as specified in the contract. The contract also provided that, in the event Big Three was able to employ the equipment covered by the contract in any service in addition to that of the transportation company, appropriate reductions in charges would be made. It was further provided that, if the transportation company did not require the number of trucks and tractors provided in the minima stated, and Big Three had no other use for them, rates on the idle trucks and tractors would be the regular hourly rates provided in the contract, less a certain amount per hour based on the capacity of the vehicles.

"On June 1, 1935, in accordance with its contract with the transportation company, Big Three transported freight moving on either the transportation company's or the railroad's billing, or both, between the points and over routes 1 to 9, inclusive, as described in appendix C to the prior report, and also over irregular routes within metropolitan Boston, and certain territory adjacent to Fitchburg, Winchendon, and Gardner, Mass., and Keene and Dover, N. H., as described in that report.

"On January 1, 1936, the transportation company discontinued using the vehicles of Big Three on certain routes, and in place thereof instituted physical operations with vehicles leased from the railroad which the latter had acquired by purchase from Big Three on January 1, 1936 * * *"

These findings are not contested by the plaintiffs; nor as stated, supra, can we under the circumstances, find that they are not substantiated by the evidence.

The plaintiffs claim, however, that the Commission erred in its rulings and conclusions, based on these findings, that the Transportation Company was a common carrier by motor vehicle as defined by the Act, 49 U.S.C.A. § 303(a) (14).

█ The Commission stated in its report that the fundamental question in determining whether the Transportation

Company was "a common carrier by motor vehicle" under the Act is: Were the vehicles operated under the direction and control of the Transportation Company and under its responsibility to the general public and the shipper?

It then held that where a motor carrier used vehicles which it did not own, with or without the services of the owner or his representative, there must be an answer to the question "Who is, in legal contemplation, the operator of the truck?"

In applying the latter test, the Commission correctly stated: "The question cannot be decided by the existence of any single factor such as the names used on the bills of lading or displayed on the vehicle, the method of payment for services performed, or the terms of the agreement between the parties. The answer depends on a full consideration of all the conditions connected with the transportation service."

 Applying these tests, it then found, on all the evidence before it, that in fact, and in law, the vehicles of Big Three, Inc., were operated under the direction and control of the Transportation Company and that the latter was on June 1, 1935, a common carrier by motor vehicle under the terms of the original and also the amended definition of that term set forth in Section 203(a) (14) of the Act, 49 U.S.C.A. § 303 (a) (14).

We find no error in the application of these tests by the Commission to its findings of fact.

The Supreme Court has fully sustained these tests. Thomson v. United States, 321 U.S. 19, 64 S.Ct. 392, 88 L.Ed. 513; United States v. Rosenblum Truck Lines, Inc., 315 U.S. 50, 62 S.Ct. 445, 86 L.Ed. 671.

In the light of the Commission's findings of fact, we feel that its conclusion that under the terms of the contract with Big Three, Inc., the Transportation Company was responsible for the direction and control of the operation of the vehicles and responsible to the general public, was founded on a rational basis. We may not under these circumstances, disturb that conclusion. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 513, 64 S.Ct. 1129, 88 L.Ed. 1420; Rochester

Telephone Corporation v. United States, 307 U.S. 125, 145, 146, 59 S.Ct. 754, 83 L. Ed. 1147.

We conclude that there is neither evidence of arbitrary action by the Commission, nor error in its interpretation of the Motor Carrier Act.

In view of our decision on the merits, we do not believe it necessary to dispose of the defense of laches interposed by the Transportation Company in its amended answer.

The plaintiffs' complaint should be dismissed, and it is so ordered.