UNITED STATES ET AL. *v.* BALTIMORE & OHIO RAILROAD CO. ET AL.

No. 33. Argued October 23, 1931.—Decided November 30, 1931.

196

*Mr. J. Stanley Payne,* with whom *Solicitor General Thacher, Assistant to the Attorney General O'Brian,* and *Mr. Daniel W. Knowlton* were on the brief, for the United States et al., appellants.

*Mr. Parker McCollester* for the Hoboken Mfrs. R. Co., appellant.

*Mr. Henry S. Drinker, Jr.,* for appellees.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

The appellant Railroad Company operates a mile and one-quarter of main line (with convenient sidings and terminals) along the Hoboken front, New York harbor, which connects directly witl the Erie Railroad and interchanges freight with other roads through the former or by car floats. It owns locomotives and electric trucks, but no cars, and is primarily devoted to switching and terminal operations.

Prior to August 6, 1926, that Company, by agreement among the carriers, received 5.25 cents from the through rail rate of $9.00 per hundred pounds upon silk moving from Pacific coast points to destinations on its line. On that date it asked the Interstate Commerce Commission to allow a larger share. After hearing, and on November 5, 1927, the Commission found the agreed division unfair and made the following entry—

" It is ordered, That of the joint eastbound transcontinental rates on silk from points on the Pacific coast to destinations on the line of complainant, at Hoboken, N. J., said complainant shall receive a division of 22 cents per 100 pounds, which division shall be apportioned among all defendants which participate in the revenues derived from this traffic.

" It is further ordered, That this order take effect as of August 6, 1926, and shall continue in force until the further order of the commission."

February 20, 1928, *Brimstone Railroad Co.* v. *United States*, 276 U. S. 104, was decided. We there held that before the Commission could prescribe a new division of joint rates among carriers it must carefully observe the sundry requirements set out in § 15 (6), Transportation Act 1920. Also that where joint rates had been agreed on by the parties and were not "established pursuant to any finding or order," the statute confers no power to require adjustment for any period prior to final order.[1]

---

[1] "Sec. 15, par. (6). *Commission to establish just divisions of joint rates, fares, or charges; adjustments.* Whenever, after full hearing upon complaint or upon its own initiative, the commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them or otherwise established), the commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers, and in cases where the joint rate, fare, or charge was established pursuant to a finding or order of the Commission and the divisions thereof are found by it to have been unjust, unreasonable, or inequitable, or unduly preferential or prejudicial, the commission may also by order determine what (for the period subsequent to the filing of the complaint or petition or the making of the order of investigation) would have been the just, reasonable, and equitable divisions thereof to be received by the several carriers, and require adjustment to be made in accordance therewith. In so prescribing and determining the divisions of joint rates, fares and charges, the commission shall give due consideration, among other things, to the efficiency with which the carriers concerned are operated, the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation, and the importance to the public of the transportation services of such carriers; and also whether any particular participating carrier is an originating, intermediate, or delivering line, and any other fact or circumstance which would ordinarily, without regard to the mileage haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge."

May 14, 1928, upon its own motion the Commission re-opened for further hearing the proceeding instituted by appellant. Much additional evidence was presented. A second report and order, entered May 7, 1929, again held and directed that it should receive 22 cents for each hundred pounds of silk delivered to points on its line. The following is from the report—

" It will be noted that the order [Nov. 5, 1927] prescribes a division from the date of the filing of the complaint, and for the future. The rate of which the division is here in issue was not ' established pursuant to a finding or order of the commission,' and under the holding in the *Brimstone* case, *supra,* the basis for retroactive application of the division is lacking. The order was, therefore, beyond our jurisdiction in so far as it attempted to prescribe a retroactive adjustment, but it was and is valid as to the future. Its effective date under the circumstances here present must be found to be the date upon which said order could have become effective under the act. By paragraph 2 of section 15 of the act ' all orders of the commission, other than orders for the payment of money, shall take effect within such reasonable time, not less than thirty days, and shall continue in force until its further order.' An order prescribing a division for the future is not an order for the payment of money. Accordingly, the original order prescribing the division for the future should have become effective on December 5, 1927.

" Defendants take the position that the facts to which we are required to give consideration under section 15 (6) of the act were not present in the original record; that, therefore, the original order herein was null and void; and that any order herein must speak from the date of a final decision upon the entire record. We do not agree with this contention. The former finding as to the future

division is amply supported by the evidence upon the original record.

"We find that on and since December 5, 1927, the division received by complainant out of joint rates on silk from points on the Pacific coast to Hoboken, N. J., on its line has been, is, and for the future will be unjust, unreasonable, and inequitable to the extent that it has been, is, or may be less than 22 cents per 100 pounds.

"An appropriate order will be entered modifying the order herein of November 5, 1927, to the extent indicated."

The second order follows—

"It appearing, That on November 5, 1927, division 1 entered its report and order in the above-entitled proceeding, and that on May 14, 1928, this case was reopened for rehearing;

"It further appearing, That such rehearing has been had and that the commission on the date hereof has made and filed a report on rehearing containing its findings of fact and conclusions thereon, which said report and the report and order of November 5, 1927, are hereby referred to and made a part hereof:

"It is ordered, That the said order of November 5, 1927, be and it is hereby modified to read as follows:

"It is ordered, That on and after December 5, 1927, said complainant shall receive a division of 22 cents per 100 pounds out of the joint eastbound transcontinental rates on silk from points on the Pacific Coast to destinations on the line of complainant at Hoboken, N. J., which division shall be apportioned among all defendants which participate in the revenues derived from this traffic east of Chicago and Peoria, Ill., St. Louis, Mo., and related gateways.

"And it is further ordered, That this order shall continue in force until the further order of the commission."

The appellees refused to obey the May 7th order, and, upon motion, February 4, 1930, the Commission entered a third directing an allowance of not less than 22 cents per hundred pounds on shipments on and after March 10th. Also that " this order shall not be construed as modifying, amending or rescinding said orders of November 5, 1927, and May 7, 1929, in so far as they relate to and determine the matters in controversy in this proceeding or the rights of the parties hereto prior to March 10, 1930, or with respect to the division of rates on any shipment delivered to or transported by complainant prior to said date."

March 11, 1930, by petition in the United States District Court for New Jersey appellees challenged the three orders above mentioned and asked that each be declared ineffective. The cause was duly heard and determined, three judges sitting.

Of the Commission's final action the court said—" This [third] order, we understand, is accepted by the plaintiffs because of the fact that it becomes effective not less than thirty days after its entry." Relief in respect of it was accordingly denied. As this part of the decree is not now challenged, we need not further consider the effect of that order.

Relying upon *Brimstone Railroad Co.* v. *United States, supra,* the court held that the evidence presented to the Commission prior to November 5, 1927, did not meet the statutory requirements. And upon that ground, as well as because of its retroactive feature, the first order was declared ineffective. The court further declared that in view of the additional testimony introduced subsequent to the re-opening on May 5, 1928, the second order might have been lawful but for the retroactive provision; this rendered the whole invalid.

As the cause will be decided upon another point, we need not inquire whether there was proper consideration

of the sundry elements enumerated in § 15 (6), Transportation Act 1920, prior to the first order. The applicable rule was definitely pointed out by *Brimstone Railroad Co. v. United States, supra.* The court below was of opinion that the statutory requirements were not met; and the Commission's own action in re-opening the proceedings indicates rather plainly that it then accepted the same view.

Section 15, par. (2), Transportation Act, provides that " all orders of the commission, other than orders for the payment of money, shall take effect within such reasonable time, not less than thirty days, and shall continue in force until its further order, or for a specified period of time, according as shall be prescribed in the order, unless the same shall be suspended or modified or set aside by the commission, or be suspended or set aside by a court of competent jurisdiction."

The only provision in the first order in respect of the effective date is this—" It is further ordered, That this order take effect as of August 6, 1926, and shall continue in force until the further order of the commission." The Commission had no power to put this order into effect as of a prior day; no future day was prescribed; the designated date was not a lawful one. Accordingly, the order did not become operative and was wholly ineffective.

" Orders . . . shall take effect . . . according as shall be prescribed in the order." The courts may not usurp the function of the Commission and say one of its orders shall become effective thirty days, a hundred days, or at any other time after entry. An order must take effect as prescribed; its effective date, if any, is the one actually appointed, not one which might have been. Unless and until the Commission duly designates a lawful date no carrier can know what is required and the courts can not command obedience. It follows that, notwithstanding

the first order, the agreed division of the through rate continued to be the lawful one.

Under the guise of putting a former one into effect, the second order likewise undertook retrospectively to change an existing agreed rate. This was beyond the power conferred. The order was not divisible; it specified no lawful date upon which it should become effective and was invalid. The division as originally agreed by the carriers remained the lawful one.

The third order appointed a definite time, as the statute requires not less than thirty days after entry, upon which it should go into effect; it also definitely stated that nothing therein should be construed as modifying, amending, or rescinding the previous ones. Appellees do not question its validity.

The decree of the court below is

*Affirmed.*

MR. JUSTICE STONE, dissenting.

The first order of the Commission, without regard to its later ones, should, I think, be held valid and operative thirty days from its date. Dated November 5, 1927, it directed that the " complainant shall receive a division of 22¢ per hundred pounds " of the joint rate on silk from Pacific coast points to destinations on its line. It specified that it should take effect as of an earlier date, August 6, 1926, " and shall continue in force until the further order of the commission." For present purposes, we must assume that it was supported by evidence and was intended to remove a division of the joint rate, which was grossly unfair to appellant.

The Commission, as this Court later decided in *Brimstone Railroad & Canal Co.* v. *United States,* 276 U. S. 104, was without authority to order a division of rates as to the past, but it did possess the power to order a division for the future. and sought, by an unambiguous use of words,

to exercise it. Yet, it is held by the Court that the order is invalid in its entirety and, in consequence, the appellants lose the benefit of it, not only for the designated period antedating the Commission's action, but for the four years which have since elapsed, because the order did not, as required by § 15 (2) of the Transportation Act of 1920, prescribe a time at least thirty days from its date when it was to take effect. The section provides that orders of the Commission " shall take effect within such reasonable time, not less than thirty days, and shall continue in force until its further order or for a specified period of time, according as shall be prescribed by the order." On its face the statute would seem merely to curtail the power of the Commission to make its order effective within thirty days, rather than to require the order to specify some particular date beyond the thirty day period when it should be effective.

But granting that the latter is the requirement of the statute, I fail to perceive in the present order any such failure to specify the time of its operation as would render it invalid as to the divisions which the Commission had power to make. It would not, I think, occur to anyone unfamiliar with legal niceties that the order failed to prescribe a time for its operation with respect to the future. It bore a date and in terms said that the division ordered should take effect as of an earlier named date and should continue in force until further order of the Commission. Thus the order prescribed that it should operate in the future as well as in the past, on the 31st and future days as well as on the 30th and each earlier day after its date. In view of the nature of the subject matter, the removal of an unjust apportionment of a through rate, it cannot be said that the Commission did not intend it to operate on the 31st and later days, even though it should turn out that there was a lack of power to

order the division as to earlier dates. See *United States v. Chicago, M., St. P. & P. R. Co.,* 282 U. S. 311.

But it is said, in effect, that since the order is void so far as it applied to a past period, identified by named dates, that part of it is as though it had never been written and, hence, the order when applied to the future must be read as though it specified no time for its operation. But the mere fact that the Commission commanded, in a single writing, some things which were beyond its power, together with others that were not, could not erase from the document either the dates or the words or change their meaning or preclude our looking at them to see in what manner and to what extent the Commission exercised the power it did possess. Looking at the words I cannot say that the order, so far as it directed the division after thirty days from its date, did not comply with §15 (2), or that it can rightly be set at naught regardless of the nature and amount of the evidence supporting it.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.