## LUBETICH v. UNITED STATES (INTERSTATE COMMERCE COMMISSION, Intervener).

### Civ. No. 314.

District Court, W. D. Washington, N. D.
June 10, 1941.

Albert E. Stephan and Preston, Thorgrimson, Turner, Horowitz & Stephan, all of Seattle, Wash., for plaintiff.

Frank Coleman, Sp. Asst. to Atty. Gen., Nelson Thomas, of Washington, D. C., Atty. for Interstate Commerce Commission, Thurman Arnold, Asst. Atty. Gen., Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, of Washington, D. C., and J. Charles Dennis, U. S. Atty., of Seattle, Wash., for defendant and intervening defendant.

Before HANEY, Circuit Judge, and BOWEN and BLACK, District Judges.

BLACK, District Judge.

In plaintiff's action, as set forth in his complaint and supplemental complaint, plaintiff sought to set aside an order of the Interstate Commerce Commission denying him a "grandfather" certificate authorizing common carrier operation between points in California, Oregon and Washington upon the contention that on and prior to June, 1935, and continuously thereafter he has been engaged in a bona fide common carrier operation, and further sought in the event such "grandfather" application should be denied to have this Court require the effective date of such denial order to be deferred until the Commission shall dispose of plaintiff's BMC 8 application for a certificate of public use and necessity, which last application was filed about three years after the "grandfather" application was made.

The Commission's order denying the "grandfather" application was issued July 2, 1940 in a proceeding entitled "Pete Lubetich Common Carrier Application 24 Motor Carrier Cases 141 (the portion of the printed report referring to the Lubetich application beginning on page 147)". The first effective date of such denial order was August 10, 1940 but such effective date, at the request of plaintiff, was continued from time to time to January 10, 1941. The Commission shortly before January 10, 1941 advised that it would be willing, at the request of the Court, to further extend the effective date of the order, which upon such Court request it has extended until June 15, 1941, so as to permit the hearing before this three-judge Court prior to the final effective date.

Such consideration by the Commission is substantial evidence that it has not been arbitrary towards plaintiff, as plaintiff contends.

The evidence presented to the Commission consisted of both oral testimony and a large quantity of exhibits. Plaintiff has introduced before us a transcript of the oral testimony but such transcript failed to include the exhibits. Such exhibits are an important part of the evidence.

The plaintiff acknowledges that the failure to produce all of the evidence before the Court has heretofore been held a bar to the Court's passing upon any contention that the findings of the Commission are contrary to the evidence.

Unquestionably without bringing before the Court all the evidence considered by the Commission the plaintiff cannot question the facts found by the Commission. Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443, 444, 50 S.Ct. 220, 74 L. Ed. 524; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 285, 286, 54 S.Ct. 692, 78 L.Ed. 1260.

In connection, therefore, with plaintiff's attempt to set aside the order denying plaintiff the "grandfather" certificate as a common carrier, the Court is only entitled to consider whether or not the ruling of the Commission was supported by the findings as made by it.

The plaintiff chiefly relies upon this phase of the case upon the decision in N. E. Rosenblum Truck Lines v. United States, D.C.Mo., 36 F.Supp. 467, in which a similar Court to this one held that that plaintiff was entitled to a "grandfather" permit as a contract carrier. Plaintiff's complaint and supplemental complaint are based entirely upon the contention that the Commission was in error in denying him rights as a "common carrier". Plaintiff in such pleadings only asked that the Commission's order should be suspended or set aside "in so far as same requires plaintiff to cease his operations as a common carrier * * *." Such in any event distinguishes the Rosenblum case, supra.

Included in the findings of the Commission 24 M.C.C. 141 at pages 147–150, we find the following:

"The operations which applicant seeks authority to continue were commenced on

March 15, 1935, and were conducted over a regular route between Los Angeles and Seattle, and also over certain irregular routes. Between June 1935 and January 1938, most, if not all, of the traffic handled by applicant or his predecessors was solicited and billed by other motor carriers, and was transported in applicant's vehicles only between the terminals of the other carriers. In January 1938 applicant engaged a solicitor of his own, established terminals, and apparently discontinued the operations previously conducted in connection with these other carriers. He now operates eight pieces of equipment, of which he owns only two. * * *

"As hereinbefore stated, most, if not all, of the traffic handled by applicant or his predecessors was solicited and billed by other motor carriers. Prior to January 1938, applicant operated two trucks. * * *

"During the period from April 1937 until January 1938, at least every shipment listed in applicant's exhibit purporting to prove operations was transported by applicant for Hendricks." (Referring to Hendricks Refrigerated Truck Lines, Inc., the operations of which are described in said same report under No. MC-68618.) "In such instances the bill of lading were issued by Hendricks, and Hendricks employed applicant to transport the goods. * * * The tariff rates applied were those of Hendricks. * * * in fact, the evidence shows that at least during the period from April 1937 until January 1938 the only freight transported in applicant's equipment was for Hendricks, a common carrier by motor vehicle."

Although the plaintiff appears to have been a common carrier from January, 1938 to the time of the hearing, such findings of the Commission certainly support the conclusion that the plaintiff was not at all times from before the critical date of June 1, 1935 to January, 1938 a common carrier. Under the authority of United States v. Maher, 307 U.S. 148, 155, 59 S.Ct. 768, 772, 83 L.Ed. 1162, it was necessary that plaintiff should be such from June 1, 1935 to the date "when the Commission passed upon the application" for a certificate under the "grandfather" clause.

Clearly, on the record before this Court, we have no authority to disturb the denial by the Commission of certificate to plaintiff under the "grandfather" clause.

The alternative contention of plaintiff is that the Court should compel deferment of the effective date of such order of denial until the BMC 8 application is passed upon.

Plaintiff's two applications constitute two separate proceedings, one of which has been finally disposed of—the other is awaiting future decision. We cannot accept plaintiff's suggestion that a BMC 8 proceeding, which plaintiff delayed instituting until three years after his application under the "grandfather" clause was made and which, in fact, was not instituted until less than ten months before the decision denying his earlier application, can be welded to and made a part of the "grandfather" proceeding so as to prevent final action upon the "grandfather" proceeding until the BMC 8 proceeding is ultimately disposed of. Under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., the Commission is granted power to determine when its orders shall become effective. Since it had the authority to deny the "grandfather" application it could say when that order should be effective. The Supreme Court in United States et al. v. Baltimore & Ohio R. Co. et al., 284 U.S. 195, 52 S.Ct. 109, 111, 76 L.Ed. 243, said: "'Orders [referring to those of the Interstate Commerce Commission] * * * shall take effect * * * according as shall be prescribed in the order.' The courts may not usurp the function of the Commission and say one of its orders shall become effective thirty days, a hundred days, or at any other time after entry. An order must take effect as prescribed; its effective date, if any, is the one actually appointed not one which might have been."

Also see Philadelphia-Detroit Lines, Inc., v. United States, D.C., 31 F.Supp. 188, 190. This last case upon appeal was affirmed per curiam by the Supreme Court, 308 U.S. 528, 60 S.Ct. 384, 84 L.Ed. 446.

As in that case, we hold that the Commission's action in this instant case was "a valid exercise by the Commission of its discretionary powers, of which no abuse appears".

To sustain plaintiff's contention upon the second phase of the case before us would give precedent for untoward results that would completely dwarf the injury plaintiff complains of.

The logic of the situation refutes plaintiff's contention. It was plainly the Congressional intent to permit operation during the pendency only of a "grandfather" application. An applicant for a BMC 8

certificate is accorded no such privilege. If it is advisable that BMC 8 applicants ought also to have the privilege of operation while awaiting decision from the Commission, the request for such should be made to Congress and not to the Court.

Plaintiff's action is dismissed.