Magee Carpet Company, Appellant, *v.* Pennsylvania Public Utility Commission (et al., Appellant).

Argued November 17, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

G. *Thomas Miller,* with him *J. Paul Rupp, John Siggins, Jr., Storey, Bailey & Rupp, Carl Rice* and *Witmer & Rice,* for Magee Carpet Company, appellant.

*Roberts R. Appel,* with him *Herbert S. Levy* and *Appel, Ranck, Levy & Appel,* for Lancaster Ice Manufacturing Company, appellant.

*Earl V. Compton,* with him *William D. Boswell* and *Compton, Handler & Berman,* for Harrisburg Steel Company, intervening appellant.

*Jack K. Busby,* with him *Austin Gavin* and *Hull, Leiby & Metzger,* for Pennsylvania Power & Light Company, appellant.

*W. Russel Hoerner,* Assistant Counsel, with him *William J. Grove,* Assistant Counsel and *Lloyd S. Benjamin,* Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY RHODES, P. J., January 19, 1954:

These appeals are from an order of the Pennsylvania Public Utility Commission of August 12, 1952. This order denied petitions for rehearing in the proceeding in which the Commission by order dated February 14, 1951, found a fuel adjustment clause of the Pennsylvania Power and Light Company to be unreasonable and ordered its modification; and it amended

the order of February 14, 1951, to include a finding that refunds, in an amount to be determined at a subsequent hearing, were due to certain consumers from February 19, 1951, the date when the Power Company received notice of the Commission's order of February 14, 1951.

The tariff supplements of the Power Company providing for the application of the first fuel adjustment clause were filed on December 11, 1947, to become effective February 10, 1948. It was estimated that approximately one thousand industrial consumers would have their bills increased on an average of 7.94 per cent. Numerous complaints were filed by such consumers against these supplements prior to their effective date. The Commission did not suspend and consequently they became effective February 10, 1948. As originally filed the tariff supplements, relating to large industrial consumers, made the fuel adjustment clause applicable only to monthly consumption exceeding 15,000 kilowatt hours. By supplements to become effective April 29, 1949, the exemption of 15,000 kilowatt hours per month was removed as to all consumers whose bills were calculated from the tariffs subject to the fuel adjustment clause.

The Commission held hearings between May 11, 1948, and November 29, 1949, with respect to the complaints. On February 14, 1951, the Commission entered an order in which it found that the fuel adjustment clause had not produced an excessive return to the Power Company, and that as a fuel clause it was not unlawfully discriminatory. The Commission, however, made the further finding: ". . . that the clause itself is unreasonable, as a rate for electric service, in that it is being applied to all energy delivered to customers to whom the clause is applicable, including hydraulic generation and purchased and interchange energy and that it does not make adequate provision

for respondent's rapidly improving system efficiency."[1] Accordingly the Commission ordered modification of the fuel clause to provide a more accurate reflection of fuel costs, and directed the Power Company to file a tariff supplement within twenty days embodying the modification. The Power Company thereupon sought a rehearing, and also an extension of time for filing of tariff supplements modifying the fuel clause. Certain consumers also petitioned for a rehearing. On March 5, 1951, the Commission, upon consideration of the petition of the Power Company, extended the time for the filing of a tariff containing the clause as directed in the order of February 14, 1951, until such time as the Commission acted on the petition of the Power Company for rehearing. On July 30, 1951, the Commission ordered oral argument which was to be limited to the question whether refunds were due consumers because of payments made for electric energy billed under the fuel clause found by the Commission to be unreasonable in its order of February 14, 1951. The Commission on August 12, 1952, issued the order from which the present appeals have been taken. The facts as set forth in the orders of February 14, 1951, and August 12, 1952, are not disputed. The amount of the refunds (to be determined at a subsequent hearing) was to be based on the difference between the revenues received by the Power Company after February 19, 1951, under the fuel clause found to be unreasonable, and the revenues which would have been received if the clause containing the modifications directed in the Commission's order of February 14, 1951, had been in effect from February 19, 1951. A petition of the Power Company for rehearing on the order of August 12, 1952, was denied, and is not here involved.

---

[1] Fixed efficiency factors were provided in the fuel adjustment clause as filed by the Power Company.

The Magee Carpet Company, the Lancaster Ice Manufacturing Company, and the Pennsylvania Power and Light Company appealed to this Court from the Commission's order of August 12, 1952. The appeals appear as follows: Magee Carpet Company, at No. 27, March Term, 1953; Lancaster Ice Manufacturing Company, at No. 98, October Term, 1953; and Pennsylvania Power and Light Company, at No. 2, March Term, 1954. We granted the petition of Harrisburg Steel Company to intervene as a party appellant in the appeal of Magee Carpet Company (No. 27, March Term, 1953), and as a party appellee in the appeal of Pennsylvania Power and Light Company (No. 2, March Term, 1954). Similarly, the Power Company was permitted to intervene as a party appellee in the appeals of the consumers.

The several appeals in the statements of questions involved raise two primary issues: (1) Did the Commission have power to order refunds, and (2) if so, was the refund period designated by the Commission lawful and proper. As to the first issue, the Power Company concedes that the Commission had power to modify the fuel adjustment clause. But it argues that the Commission had no authority in law to order any refunds based on modifications of the clause alone; and that the Commission's refund order is illegal and unfair, and deprives the Power Company of its property without due process of law. As to the second issue, the consumer-appellants contend that, since the Commission found the fuel adjustment clause unreasonable, it was mandatory for the Commission to allow refunds to the consumers from February 10, 1948. This was the date on which the fuel clause became effective, complaints having been made prior to the effective date.

The Commission's finding in its order of February 14, 1951, that the fuel clause was unreasonable in that

it did not adequately provide a proper adjustment of fuel costs is not challenged.. But underlying the issue as to whether the Commission had power to order any refunds is the question whether the finding of unreasonableness of the fuel · clause afforded a sufficient basis for the refund order, under section 313 (a) of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1153.

Section 313 (a) of the Public Utility Law of 1937, 66 PS §1153, provides as follows: "If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within two years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of each such excessive payment. In making a determination under this section, the commission need not find that the rate complained of was extortionate or oppressive. Any order of the commission awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. The commission shall state in any refund order the exact amount to be paid, the reasonable time within which payment shall be made, and shall make findings upon pertinent questions of fact. An appeal may be taken to the Superior Court from any refund order, but if no such appeal is taken, the parties shall be bound by the findings and orders of the commission."

The obvious and fundamental purpose of a fuel adjustment clause is to provide for the adjustment of charges for service to a consumer to directly reflect the changing fuel cost to the utility. The validity of such clauses as a part of utility rate structures generally is not here in question. See section 307 (a) of the Public Utility Law of 1937, 66 PS §1147. In *Slate Belt Electric Street Railway Company v. Public Service Commission,* 73 Pa. Superior Ct. 493, this Court sustained a finding of the Commission that a "coal" or fuel adjustment clause there involved was not so uncertain and indeterminate as to be arbitrary or unreasonable and therefore unlawful. In *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 216, 90 A. 2d 607, the fuel adjustment clause was sustained also as not unreasonable or unlawfully discriminatory. Although the fuel clause was questioned on similar grounds in the *Slate Belt* case, in the present proceeding the Commission concluded on the evidence before it that the fuel clause was unreasonable as to consumers subject to it, because it permitted the utility to recover more than the bare cost of fuel. The clause was applied by the Power Company to all kilowatt hours sold to the affected consumers; but the Commission held that only the energy generated by the Power Company's steam stations, upon sale to the ultimate consumer, should be subject to fuel clause application. In its order of August 12, 1952, the Commission said:

"[The Power Company's] Fuel Adjustment Clause cannot be considered as properly applicable to costs other than fuel. Wages, materials and supplies as stated by [the Power Company] to be a portion of 'production costs' cannot be deemed to be within the scope of the fuel adjustment clause.

"The clause itself refers to fuel 'on hand and delivered at the Company's electric generating plants.' Further, the fuel adjustment clause uses as a base the average system cost of fuel at its steam generating plants ... Application of the Fuel Adjustment Clause now before us must be restricted wholly to the established increased or decreased cost of the fuel itself 'on hand and delivered at the Company's generating plants.' "

Whether the clause operated reasonably or unreasonably in effecting its limited purpose was like most questions dealing with the refinements of rate structures primarily a factual matter for determination by the Commission. The Power Company itself does not challenge the Commission's finding of unreasonableness.

It is argued on behalf of the Power Company that, the Commission having found the fuel clause did not produce an excessive return on fair value and was not discriminatory between classes of consumers, the finding of unreasonableness cannot be the basis of any refunds under section 313 (a). The basis of the finding of unreasonableness is that the Power Company could recover from the affected consumers under the fuel clause more than the bare cost of fuel. The basic rates in the tariffs are not in issue in this proceeding. The Power Company inserted in its tariffs the fuel adjustment clause in question for a limited and specific purpose. The Commission found that the fuel clause operated to permit the utility to recover from consumers subject to it more than the actual increase in fuel costs. The Commission having found the clause unreasonable in this respect could make the "excess," under the terms of the statute, the subject of refunds. The fact that the fuel clause contained or dealt with a variable did not prevent the Commission from mak-

ing a determination that the clause operated unreasonably. It was not necessary that the fuel clause produce an excessive overall return to the Power Company, that it be discriminatory as between classes of consumers, or that it be otherwise unlawful. A fuel adjustment clause should stabilize, not augment, the allowable return of the utility from its basic rates.

We are not concerned in the present appeals with the Power Company's fair value or the fair return thereon, but rather with a supplementary arrangement in the rate structure under which one class of consumers has paid an excess which is properly subject to a refund order under the Act. We are of the opinion that the refund order as such is proper and lawful, and consequently no question of unconstitutional confiscation of the property of the utility is involved. An inadequate basic rate structure may produce confiscation but not a fuel clause intended to equitably adjust a variable item of cost to be reflected in the billings for kilowatt hours sold to the affected consumers.

In this connection the Power Company places much reliance upon an order of the Commission of July 30, 1952, at C. D. 15559, etc., in which the Commission allowed the Power Company a rate increase amounting to approximately \$3,000,000 applicable to industrial consumers of the type subject to the fuel clause. These new rate schedules in the tariff supplements to be filed by the Power Company by September 12, 1952, did not become effective, however, under the order of July 30, 1952, until subsequent to August 12, 1952. The proceeding involving such tariffs with increases and adjustments was a complete rate case in which the Commission using the base figures for the year ending October 31, 1951, made a finding of fair value of the Power Company's property used and useful in the public service, together with all the subsidiary findings nec-

essary for a determination of the reasonableness of the
rate increases. The Power Company as appellant now
argues that the Commission's order of July 30, 1952,
was, in effect, a finding that the industrial consumers
were paying less than a proper amount for the services
rendered during the period for which refunds based
on the fuel clause were awarded in the present pro-
ceeding. That order, allowing an increase in the rates
of the utility, could operate prospectively only. It was
a separate and distinct proceeding and did not concern
refunds ordered over a prior period in a prior pro-
ceeding. An ultimate change in basic rates in new
tariffs by virtue of a rate proceeding is not controlling
of a prior proceeding involving a then subsisting fuel
adjustment clause. Furthermore, in its order of July
30, 1952, the Commission dealt at length with the Power
Company's latest fuel adjustment clause, modified the
clause as submitted by the utility, and recognized fully
the pronouncement in its order of February 14, 1951,
that a fuel adjustment clause should permit recoupment
by the utility of fuel costs alone, and not act to adjust
basic rates. The fact that the Commission in its order
of July 30, 1952, would permit allowance to the Power
Company under a new fuel adjustment clause for pur-
chased power affected by the cost of fuel and for line
losses, which it had denied the utility under the refund
order of August 12, 1952, does not necessarily make in-
valid the refund order which was the result of a sep-
arate proceeding involving different evidence.

Was it proper for the Commission to limit the re-
funds to be allowed to the period from February 19,
1951, to August 12, 1952? The industrial consumer-
appellants contend that, since the Commission found
the fuel clause improper on February 14, 1951, pay-
ments under such defective clause were excessive from
February 10, 1948, the date of its inception, and that

the Commission is obliged under the statute to award refunds for the entire period. We find nothing in the language of section 313 (a) which makes it mandatory for the Commission to award refunds under a defective fuel adjustment clause, although it has the "power and authority" to do so. Within the limits prescribed by statute, the Commission undoubtedly has discretion as to the period to be covered by refunds. While refunds must necessarily be capable of exact determination under the Commission's order, the period for which they may be allowed is not so fixed by statute that the Commission has no discretionary power in this respect. We think this is true notwithstanding that complaints were filed against the fuel adjustment clause before its effective date, and that as a general principle the burden was upon the utility to sustain its reasonableness (see section 312 of the Public Utility Law of 1937, 66 PS §1152; *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 395, 90 A. 2d 850). In view of the fact that the Commission, by its order of February 14, 1951, found that the fuel clause was unreasonable and ordered modifications thereto, the utility was thereafter fully aware that excess collections thereunder might eventually have to be returned. The Commission expressly stated that it was allowing refunds only from February 19, 1951, the date of the receipt by the Power Company of the order of February 14, 1951, because that was the first official notice the Power Company had that the fuel clause which operated to recoup more than the bare cost of fuel was unreasonable and therefore illegal. This was a valid reason here. Fuel adjustment clauses in tariffs were originally for emergency and temporary purposes, and their present application has been the result of frequent refinements which the utility could not always anticipate.

It is not a question whether the Commission could have awarded refunds from February 10, 1948, but only whether the award of such refunds from February 19, 1951, was, under the terms of the statute, lawful and proper. We think the Commission in fixing the refund period was acting within its discretionary power on the facts before it. The Commission's order as to refunds must therefore be affirmed.

The Commission permitted the effect of the fuel clause as revised by its order of February 14, 1951, to be stayed pending disposition of the Power Company's petition for rehearing. This did not prevent the Commission from ruling eventually against the Power Company and awarding refunds based on its failure to make effective the prescribed revision of the fuel clause. The stay was granted at the request of the utility, which ran the risk of persuading the Commission to alter its ruling relative to the application of the fuel clause which was the basis of the refund order. Cf. *Pennsylvania Railroad Company v. Public Service Commission,* 125 Pa. Superior Ct. 558, 568, 190 A. 367.

The order of the Commission of August 12, 1952, is affirmed.