Equitable Gas Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued November 16, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*David Dunlap*, with him *John T. Brown*, for appellant.

*W. Russel Hoerner*, Assistant Counsel, with him *Lloyd S. Benjamin*, Counsel, for Pennsylvania Public Utility Commission, appellee.

*Anne X. Alpern*, City Solicitor and *J. Frank McKenna, Jr.*, First Assistant City Solicitor, for City of Pittsburgh, intervenor, appellee.

OPINION BY RHODES, P. J., January 19, 1954:

The Pennsylvania Public Utility Commission by its order of August 11, 1953, allowed the Equitable Gas Company a part of a proposed rate increase under tariff supplements filed January 29, 1952, and directed the Company to refund to its customers the difference received under those supplements between January 1, 1953, the effective date of the increase, and October 1, 1953 (extended to November 1, 1953), the effective date of the new tariff supplements containing rates to produce the allowable revenues prescribed in the Commission's order.

The Company has appealed from that part of the Commission's order of August 11, 1953, which directs refunds.[1] On September 25, 1953, we granted the peti-

---

[1] It has been stipulated by the Company that the appeal is limited to the refund issue.

tion of the City of Pittsburgh to intervene as a party appellee. We also granted the petition of the Company to have the appeals operate as a supersedeas, thus deferring the calculation and payments of refunds as directed in the Commission's order.

The Company filed on January 29, 1952, the tariff supplements providing for increased rates to become effective April 1, 1952. These supplements proposed increases for the Company's Pennsylvania retail customers totaling approximately $3,000,000 annually.

The City of Pittsburgh filed a complaint against the increased rates on March 6, 1952, and on March 31, 1952, the Commission began an investigation on its own motion into the reasonableness of the proposed rates. Acting under section 308 (b) of the Public Utility Law of 1937, 66 PS §1148 (b), the Commission at the same time suspended the proposed supplements for a period of six months from April 1, 1952, to October 1, 1952. On September 22, 1952, the Commission further suspended the operation of those supplements for an additional three months from October 1, 1952, to January 1, 1953, on which date the rates in the tariff supplements of January 29, 1952, became effective by operation of law.

The City of Pittsburgh on December 1, 1952, sought to have the Commission prescribe the Company's then existing rates as temporary rates to remain in effect from January 1, 1953, the end of the suspension period, until final disposition of the rate proceeding. On December 23, 1952, the Commission denied the City's petition to fix temporary rates.

In its final order of August 11, 1953, the Commission found that the new rates would yield $1,059,216 in excess of the annual allowable revenues of $27,876,200 which would permit a rate increase of only

$2,013,784 instead of the increase of $3,073,000 embodied in the new rates. The Commission thereupon found that the new rates which became effective January 1, 1953, were unfair, unreasonable and unlawful; directed the cancellation of the then effective tariffs and the filing of new tariff supplements containing rates designed to produce the allowable annual operating revenues; and directed the Company to provide for the payment of refunds.

The Company contends that the Commission had a statutory duty under section 308 (b) to consider the effect of the suspension upon the gross revenues collected by the Company and pronounce its conclusions. It is thus argued that the Company lost approximately $1,500,000 on the basis of the increased rates as sustained in the final order of the Commission during the suspension period preceding January 1, 1953; and that this alleged loss should be applied by the Commission to offset the refunds of approximately $1,000,000 due to consumers.

The questions which the Company raises in the present appeals have been decided adversely to it by our decision in *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 216-218, 90 A. 2d 607. In that case, as here, the utility's higher rates under its tariff, suspended for the maximum period of nine months by the Commission, were ultimately sustained to permit in part the proposed rate increase. There, too, the new rates under the tariff became effective by operation of law at the expiration of the nine-month suspension period, and the Commission ordered refunds to consumers over the period for which the full rate increase had been in effect. The utility there, as here, contended that under section 308 (b) it was mandatory that the Commission make express provision in its order for the utility to recoup

its alleged loss for the nine-month suspension period or to the extent of three-fourths of its allowable annual increase in revenue. We held (pages 217, 218 of 171 Pa. Superior Ct., page 621 of 90 A. 2d): "The exercise of the power to suspend a proposed rate increase depends upon many factual matters, including the probability of whether the new rates will ultimately be held reasonable; it is primarily an administrative function within the sound discretion of the Commission. Philadelphia v. Pennsylvania Public Utility Commission, 164 Pa. Superior Ct. 96, 103, 63 A. 2d 391. Presumptively, the Commission considered the effect of the suspension in fixing final rates. It could determine the general effect of the final rates with relation to the suspension, and it was not bound to make a specific monetary allowance for a calculated loss allegedly due to the suspension simply because the final order of the Commission in point of fact allowed a partial increase in rates and allowable revenue. Certainly the Commission was cognizant of its own order of suspension, and, under the circumstances, it may well have concluded that no specific provision dealing with recoupment was necessary. The argument assumes that any increase ultimately allowed in annual revenue automatically establishes a loss due to suspension. Such a construction of this portion of section 308 (b) would deprive the Commission of discretion in the matter of suspension, and reduce the question to a fixed mathematical calculation. . . The order of the Commission is not shown to be erroneous on the mere assertion that the Commission failed to consider the effect of the suspension in prescribing new rates."

The fact that in the present proceeding the Company asked the Commission to apply the suspension allowance to offset refunds, whereas Duquesne Light Company in the case cited suggested prospective re-

coupment by an adjustment of rates, is not material on the substantive issue here involved.

In *Philadelphia v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 96, 103, 63 A. 2d 391, we said, in considering section 308 (b), that the power of the Commission to suspend was a discretionary power, and that the Commission, as an administrative body, has access to all facts essential to an initial determination of the necessity for a suspension. We think the provision in that section that "The commission shall consider the effect of such suspension" in ultimately fixing the rates of a utility must be likewise construed as giving the Commission discretion in its application as to the effect of suspension. To adopt the interpretation of sections 308 (b)[2] and 313 (a)[3] for which the Company argues would unduly limit the Commission in the exercise of its administrative discretion and reduce rate making, especially in the matter of the effect of suspension on ultimate rates and refunds, to the application of a fixed mathematical formula. It is obvious that these sections should be construed as giving the Commission certain discretionary power within the limits of the statute. See *City of Pittsburgh v. Pennsylvania Public Utility Commission*, supra, 171 Pa. Superior Ct. 187, 90 A. 2d 607; *Magee Carpet Com-*

---

[2] Section 308 (b) of the Public Utility Law of 1937, 66 PS §1148, provides in part: "The commission shall consider the effect of such suspension in finally determining and prescribing the rates to be thereafter charged and collected by such public utility."

[3] Section 313 (a) of the Public Utility Law of 1937, 66 PS §1153, provides in part: "If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, . . . the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron in consequence of such unlawful collection, within two years prior to the date of the filing of the complaint, . . ."

*pany v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 438, 102 A. 2d 229. This discretionary power is a necessary corollary of the Commission's function as a fact-finding and administrative body. Had there been an intention to limit the discretion of the Commission it would have been expressed. Cf. section 310 (e) of the Public Utility Law of 1937, 66 PS §1150.

The Commission in its final order of August 11, 1953, referred to the filing of the tariff supplements on January 29, 1952, to its orders of March 31, 1952, and September 22, 1952, suspending the operation of the proposed supplements, and to the date when the rates became effective by operation of law. In considering the effect of suspension in arriving at its final conclusion, the Commission was not required to recite in detail the reasoning processes involved in the exercise of its administrative discretion. What, if any, provision should be made under the circumstances was within the discretionary power of the Commission.

The order issued by this Court on October 12, 1953, making the appeals, Nos. 168 and 169, April Term, 1953, a supersedeas of the Commission's order, is vacated, and supersedeas is terminated.

The order of the Commission is affirmed.