**STATE of North Dakota, ex rel. PUBLIC SERVICE COMMISSION, Plaintiff and Respondent,**

v.

**MONTANA–DAKOTA UTILITIES CO., a foreign corporation, Defendant and Appellant.**

No. 7741.

Supreme Court of North Dakota.

March 31, 1958.

Cox, Pearce & Engebretson, Bismarck, Earl H. A. Isensee, Minneapolis, of counsel, for defendant and appellant.

Leslie R. Burgum, Atty. Gen., and Gerald G. Glaser, Commerce Counsel, Bismarck, for plaintiff and respondent.

Richard P. Gallagher, Mandan, amicus curiæ.

MORRIS, Judge.

The defendant and appellant, Montana-Dakota Utilities Co., is a corporation engaged in the operation of public utilities in the state of North Dakota and as such is subject to regulation by the Public Service Commission of the state pursuant to statutory authority and direction. This controversy involves rates charged or to be charged by the appellant for the sale of electric energy.

In 1948 the Public Service Commission approved a schedule of rates to be charged by the appellant. On or about April 17, 1957 the appellant filed with the Public Service Commission a new and increased schedule of rates accompanied by a notice that they were to be effective thirty days after the receipt thereof by the Commission which included the statement that:

"This application is submitted in accordance with the provisions of the North Dakota Revised Code of 1943, Chapters 49–05 and 49–06."

On May 7, 1957 the appellant filed an amendment of the schedule above described. On May 13, 1957 the Commission adopted by unanimous action a motion:

"that the revised schedule of electric rates for various classes of service as filed by the Montana-Dakota Utilities Company and which has been docketed as Case No. 5576 be suspended until further order of the Commission."

On the following day the secretary of the Commission wrote the appellant as follows:

"This is to advise you that on May 13, 1957, the Commission suspended until further order the application of Montana-Dakota Utilities Company for an increase in electric rates covering various classes of electric service in North Dakota.

"The matter has been docketed as Case No. 5576. You will be promptly informed of any further action taken by the Commission."

Under date of June 4, 1957, which was within thirty days after the filing of the amended schedule, the Commission gave notice to the appellant that an initial public hearing would be held with respect to the reasonableness of the proposed rate schedules on July 1, 1957. On September 10, 1957 the Commission gave notice that the hearing would be resumed. The resumed hearing was completed October 9, 1957. On or about November 2, 1957 the appellant notified the Commission and its consumers by letter that the new rate schedules went into effect on October 5, 1957 and that all service rendered after October 4, 1957 would be billed by the company at the new rates.

On November 6, 1957 the Commission instituted this proceeding in the District Court of Burleigh County reciting in substance the facts above set forth and alleging that a hearing had been held by the Commission on the appellant's application and new rate schedule and that the Commission was in the process of reviewing the evidence preparatory to rendering a decision. It was further alleged that on May 13, 1957 the new rate schedule was suspended by the Commission and that the suspension was never modified, revoked or altered. It was also alleged that the rate schedule approved by the Commission in 1948 is still in full force and effect but that unless the Montana-Dakota Utilities Company is restrained by the court it will collect rates from its customers pursuant to its letter of November 2, 1957 and that such rates are in excess of those set out in the schedules of 1948 and are unlawful, unauthorized and improper. The Commission then asked the court to enjoin the appellant from instituting and making effective its proposed new rates pending the further order of the Commission.

The appellant answered and alleged the filing of its new rate schedules and the mo-

tion of the Commission of May 13, 1957 purporting to suspend the effective date of the new schedules until the further order of the Commission. It also alleged that a hearing was held by the Commission on its own motion to inquire into the reasonableness and fairness of the new rates, which hearing was held on July 1, 1957 and resumed on October 8 and 9, 1957, but that no order had been issued by the Commission up to the date of the answer which was November 27, 1957. Appellant further alleged:

"That the resolution of the Public Service Commission suspending the effective date of said new rate schedules could not, under the law, be effective for more than 120 days after the initial 30 day notice period, and that no other resolution or order of the Commission suspending the effective date of said rate schedules was made, except that of May 13, 1957, and that said new rates and schedules of charges became effective and became the legal rates and charges for the company on the 5th day of October, 1957."

This paragraph of the answer sets forth appellant's position with respect to the main issue of this controversy.

After a hearing had in the District Court, judgment was entered enjoining the appellant from charging and collecting the proposed rates for 90 days from November 29, 1957 and directing the Public Service Commission to take appropriate action during that period.

The Montana-Dakota Utilities Co. appealed from that judgment. At the time the case was argued in this court on February 5, 1958 counsel were agreed that the Public Service Commission had decided the matter and had entered its order accordingly. The primary question is whether it was lawful for the appellant to charge and collect rates pursuant to the new schedule after October 4, 1957. The case is here for trial de novo on demand of the appellant.

This controversy involves the interpretation and application of two statutes. The first is Section 49-0505, NDRC 1943 which provides:

"No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules, classifications, or service which have been filed and published by any public utility, except after thirty days' notice to the commission. Such notice shall state plainly the changes proposed. The commission for a good cause shown, may allow changes upon less than the notice herein specified, either in particular instances or by a general order applicable to special or peculiar circumstances or conditions."

The appellant contends that under this section a public utility may file a new schedule of rates regardless of the origin or source of the old ones and that the new schedule when accompanied by proper notice to the commission will become effective thirty days after filing unless suspended pursuant to the procedure provided by the succeeding Section 49-0506, NDRC 1943 without reference to whether rates to be charged are increased or decreased by the new schedules.

The Commission points to Section 49-0511, NDRC 1943 which provides that:

"Every order entered by the commission shall continue in force until the expiration of the time, if any, named by the commission in such order or until revoked or modified by the commission, unless the same is suspended, modified, or revoked by order or decree of a court of competent jurisdiction."

It is argued that in this case a schedule of rates was approved by the Commission December 8, 1948 which can be changed only by another order of the Commission

or by the decree of a court of competent jurisdiction in a proper case. It is particularly urged that Section 49-0505, NDRC 1943 is not applicable where the rates filed exceed those named in an outstanding unrevoked order of the Commission.

The source of the three sections above referred to is Chapter 192, Session Laws N.D.1919 which was our first comprehensive regulatory statute pertaining to rates, charges and services of public utilities. The identical language of Section 49-0511 is to be found in Section 3 of the original act. See also Section 4609c3, 1925 Supplement to Compiled Laws.

Section 49-0505, NDRC 1943 is an amendment of the first paragraph of Section 14 of the original Act which read:

"No change shall be made by any public utility in any tariffs, rates, joint rates, fares, tolls, schedules or classifications, or service in force at the time this Act takes effect, except after thirty days' notice to the Commissioners, which notice shall plainly state the changes proposed, and, upon a showing before the Commissioners and a finding by the Commissioners that such increase is justified."

This paragraph was amended to read in its present form by Chapter 207, Session Laws N.D.1937. In rate litigation arising prior to the amendment the expressions of this court are in accord with the views expressed by the Commission:

"As we construe the Public Utilities Act, rate increases cannot be ordered except after notice and hearing." City Commission of Bismarck v. Bismarck Water Supply Company, 47 N.D. 179, 181 N.W. 596, 600.

"Before a schedule can be adopted, the interested parties must have had a hearing upon notice." Lyons v. Otter Tail Power Co., 68 N.D. 403, 280 N.W. 192, 194.

However, Chapter 207, Session Laws N.D.1937 wrought a drastic change in procedure pertaining to the promulgation and adoption of rates and other specified matters involving rates and services of public utilities. The discretionary power of the Commission was greatly enlarged. No longer did the statute compel it to hold a hearing or make any finding with respect to every proposed increase in rates by a public utility. Where rate schedules were filed and noticed pursuant to Section 49-0505 non-action by the Commission resulted in the proposed rates becoming effective. The amendment came in conflict with Section 3 of Chapter 192, Session Laws N.D. 1919 (Section 49-0511, NDRC 1943) and to the extent of the matters particularly covered by the amendment it superseded and repealed that older and more general statute.

"When a subsequent enactment covering a field of operation coterminous with a prior statute cannot by any reasonable construction be given effect while the prior law remains in operative existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict." Sutherland Statutory Construction, 3rd Ed., Sec. 2012.

"The subsequent enactment of a statute which treats a phase of the same general subject matter in a more minute way consequently repeals *pro tanto* the provisions of the general statute with which it conflicts."

Sutherland Statutory Construction, 3rd Ed., Sec. 2022; State ex rel. Lofthus v. Langer, 46 N.D. 462, 177 N.W. 408; Hagstrom v. Estherville School Dist. No. 43, 67 N.D. 56, 269 N.W. 93.

Having determined that Section 49-0505, NDRC 1943 is applicable to the schedules filed by the appellant with the Public Service Commission it follows that Section 49-0506 is also applicable and these two sec-

tions must be considered together in determining if or when the schedules filed by the appellant became effective.

It is interesting to note that our original Public Utilities Act, Chapter 192, Session Laws N.D.1919, contained a number of similar provisions and some of the identical language found in the Illinois Public Utility Act (Laws 1913, page 478). Section 36 of that Act corresponded in a large measure to Section 14 of our original Public Utility Law. See Illinois Bell Telephone Co. v. Commerce Commission, 304 Ill. 357, 136 N.E. 676, 677. In interpreting the Illinois statute in that case the court said:

"Whenever a schedule of a change of rates is filed with the Commission, that body may upon complaint, or upon its own initiative, enter upon a hearing and investigation concerning the propriety of such change of rates, charges, etc., and during that hearing the rates shall not go into effect. Section 36 contains a proviso, however, that the period of suspension of the rates, charges, etc., shall not be more than 120 days beyond the time when the same would otherwise go into effect, unless the Commission extends the period of suspension for a term of not more than 6 months. It is clear from the language of this section that the power to suspend rates is limited to a period of 10 months after the time at which the schedule would otherwise have gone into effect."

The Illinois act also provided that the Commission should make findings before allowing a rate increase to become effective but that provision was repealed in 1921, S.H.A. ch. 111⅔, §§ 1 et seq., 91. Antioch Milling Co. v. Public Service Co. of Northern Illinois, 4 Ill.2d 200, 123 N.E.2d 302, 305, wherein the court said:

"The substantive requirement that rate increases have the prior approval of the commission has been repealed, and the decision whether to suspend them has been committed to the discretion of the commission."

Section 49–0506, NDRC 1943 provides that when a notice or schedule resulting in an increase or decrease in any rate is filed with the Commission, the Commission upon a complaint or its own initiative may order a hearing upon due notice:

"and pending the hearing and decision thereon, such rate, classification, contract, practice, rule, or regulation shall not go into effect, but the period of suspension thereof shall not extend more than one hundred twenty days beyond the time when it otherwise would go into effect, unless the commission extends the period of suspension for a further period not exceeding six months."

This section further provides that on the hearing the Commission shall establish rates which it shall find to be just and reasonable. At the hearing the burden is on the utility to show that a proposed rate is just and reasonable. ·

"All such rates, classifications, contracts, practices, rules, or regulations not so suspended, on the expiration of thirty days from the time of filing the same with the commission, or of such lesser time as the commission may grant, shall go into effect * * * subject to the power of the commission, after a hearing had on its own motion or upon complaint, to alter or modify the same."

The language quoted from this section appears in substantially the same form in the second paragraph of Section 14 of our original Public Utilities Act.

In City of Edwardsville v. Illinois Bell Telephone Co., 310 Ill. 618, 142 N.E. 197, 199, the court, in commenting on similar language in the Illinois Act, said:

"The right of the public utility to fix its rates, subject to the power of the Commission to suspend or alter them,

is recognized. The power of the Commission to suspend is limited to 120 days beyond the time when the rate or charge would otherwise go into effect, unless the Commission, in its discretion, extends the period of suspension for a further period not exceeding six months."

"The board of railroad commissioners possesses only the authority conferred upon it by the Constitution and the statutes of the state. All orders made by it must conform with the statutes to be valid." Lyons v. Otter Tail Power Co., 68 N.D. 403, 280 N.W. 192, 194.

"It is elementary that the Board of Railroad Commissioners possesses only the authority conferred upon it by the Constitution and the statutes of the state. Railroad Com'rs v. Oregon Ry. & Nav. Co., 17 Or. 65, 19 P. 702, 2 L.R.A. 195. Its action, therefore, concerning any subject-matter within its jurisdiction, to be valid, must be in substantial conformity with the statutes governing its procedure, and must be consonant with due process of law." State ex rel. Lemke v. Chicago & N. W. R. Co., 46 N.D. 313, 179 N.W. 378, 381.

"The constitution of North Dakota provides that the 'powers and duties' of the Public Service Commissioners 'shall be prescribed by law.' The powers conferred upon the Public Service Commissioners by law pursuant to the constitutional requirement must be exercised by them in accordance with the statute bestowing such powers and they cannot rightfully dispense with any of the essential forms of proceedings which the lawmakers have prescribed for the purpose of investing them with the power to act." Petition of Village Board of Wheatland, 77 N.D. 194, 42 N.W.2d 321, 325, Syllabus by the court, Par. 9.

"Administrative authorities are creatures of statute and have only such powers as the statute confers on them. Their powers must be exercised in accordance with the statute bestowing such powers, and they can act only in the mode prescribed by statute." 42 Am.Jur. Public Administrative Law, Sec. 68. See also 73 C.J.S. Public Administrative Bodies and Procedure § 59.

When Sections 49–0505 and 49–0506, Compiled Laws N.D.1943 are construed together the powers and duties of the Public Service Commission with respect to the procedure to be followed when a proper schedule and notice with respect to change of rates is filed seems clear. The Commission has 30 days after filing to exercise its discretion as to whether or not it will hold a hearing with respect to the propriety of the rate. If it decides to hold a hearing it must do so upon due notice. If no notice is given the rate becomes effective at the end of thirty days by virtue of the statute. The Commission also, for a good cause shown, may allow rate changes to become effective in less than the thirty days. If the Commission orders a hearing upon due notice

"pending the hearing and decision thereon, such rate * * * shall not go into effect, but the period of suspension thereof shall not extend more than one hundred twenty days beyond the time when it otherwise would go into effect,".

This suspension is wholly dependent upon the issuance by the Commission of an order for hearing on notice. Once the hearing is so ordered the statute provides a suspension of the rate "pending the hearing and decision thereon" which is limited to 120 days beyond the time the rate would have gone into effect had no hearing been ordered. However, the limitation of 120 days is not necessarily final. The suspension terminates at the end of 120 days "unless the commission extends the period of sus-

pension for a further period not exceeding six months." This extension is a matter that rests in the discretion of the Commission. Thus it appears that a rate becomes effective on the expiration of 30 days from the time of filing or such lesser time as the Commission may grant unless a hearing on notice is ordered, in which event the proposed rate is suspended pending the hearing and decision of the Commission with a limit of 120 days on that suspension subject to the power of the Commission to extend the suspension for as long as 6 months.

■ The difficulty in this case arises from the fact that the Commission neither followed the statute nor based its action upon it. Its only action with respect to the suspension of rates was a motion adopted May 13, 1957 stating:

"that the revised schedule of electric rates for various classes of service as filed by the Montana-Dakota Utilities Company and which has been docketed as Case No. 5576 be suspended until the further order of the Commission."

The motion makes no reference to a hearing. At the time the motion was passed no hearing had been ordered. None was ordered until June 4, 1957. At the time the motion was made no power of suspension was vested in the Commission. No suspension either statutory or pursuant to the discretion of the Commission can exist except "pending the hearing and decision thereon." The action taken by the Commission on May 13 was wholly abortive and void. This becomes abundantly clear when we consider that had the Commission not some three weeks later ordered a hearing the proposed rate would have gone into effect under the mandate of the statute 30 days after the filing of the amended schedule regardless of the motion of May 13 and there would have been no suspension, statutory or otherwise.

■ In United States v. Baltimore & Ohio R. Co., 284 U.S. 195, 52 S.Ct. 109, 111, 76 L.Ed. 243, the court considered an order of the Interstate Commerce Commission entered on November 5, 1927 which directed:

"That this order take effect as of August 6, 1926, and shall continue in force until the further order of the commission."

Section 15, Par. (2) of the Transportation Act, 49 U.S.C.A. § 15(2) provided that:

"all orders of the commission, other than orders for the payment of money, shall take effect within such reasonable time, not less than thirty days, and shall continue in force until its further order, or for a specified period of time, according as shall be prescribed in the order, unless the same shall be suspended or modified or set aside by the commission, or be suspended or set aside by a court of competent jurisdiction."

The court said:

"The Commission had no power to put this order into effect as of a prior day; no future day was prescribed; the designated date was not a lawful one. Accordingly, the order did not become operative and was wholly ineffective."

The Public Service Commission had no power or authority to take the action that it did on May 13. It then had no power of suspension. Later, by virtue of the hearing ordered on June 4, the 120 day suspension provided by the statute became effective. The Commission made no decision and no attempt to extend the period of suspension with the result that the schedule of rates filed by the appellant became effective at the end of the statutory period, which was October 5, 1957.

The trial court determined as a conclusion of law that:

"The Commission did not extend the suspension of rates for any additional time after October 5, 1957."

102

We agree with that conclusion. However, the trial court felt that he had the equitable power to enjoin the Montana-Dakota Utilities Co. from charging and collecting the proposed rates and therefore ordered entry of the judgment from which this appeal is taken. The court overlooked the fact that under the statutes heretofore discussed the power of suspension is wholly statutory. It is a discretionary power vested in the Commission exclusively, not in the courts. A similar power is vested in the Interstate Commerce Commission. The same basic question now before us on this point was involved in Great Northern R. Co. v. Board of Railroad Commissioners, D.C., 33 F.2d 934, in which the trial court issued an injunction restraining the Board of Railroad Commissioners of North Dakota from putting into effect intrastate rates pending a decision of the Interstate Commerce Commission involving the same rates. On appeal to the Supreme Court of the United States that court, in Board of Railroad Commissioners of State of North Dakota v. Great Northern R. Co., 281 U.S. 412, 50 S.Ct. 391, 396, 74 L.Ed. 936, said:

"Congress, in 1910, authorized the Interstate Commerce Commission, on the filing of rates by interstate carriers with the Commission, to suspend the operation of the rates for a stated period, and this provision has been continued in later legislation. Interstate Commerce Act, § 15(7), 36 Stat. 552, 41 Stat. 486, 487 [49 U.S.C.A. § 15(7)]. This power of suspension was intrusted to the Commission only."

See also Manhattan Transit Co. v. United States, D.C., 24 F.Supp. 174; Carlsen v. United States, D.C., 107 F.Supp. 398; Long Island Railroad Co. v. United States, D.C., 140 F.Supp. 823. The same construction has been given to a Pennsylvania suspension statute. City of Philadelphia v. Pennsylvania Public Utility Commission, 164 Pa.Super. 96, 63 A.2d 391; Equitable Gas Co. v. Pennsylvania Public Utility Commission, 174 Pa.Super. 450, 102 A.2d 235. The power of suspension under the provisions of Section 49-0506, NDRC 1943 has been entrusted to the Public Service Commission only, to be exercised in the manner therein provided.

The Public Service Commission failed to suspend the rates proposed in the new schedules filed by the Montana-Dakota Utilities Co. beyond October 4, 1957 and the trial court was without power to restrain the collection of such rates as a matter of its own discretion. The judgment appealed from is therefore reversed.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.